GORDON PRINCE, Adm'r of the Estate of Richard Thomas Prince, Deceased, Plaintiff-Appellant, *v.* ARTHUR M. WOLF *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-2354

Opinion filed February 11, 1981.

Joseph M. Fasano, of Chicago (Philip J. Farina, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Scott R. Stevenson and Stephen R. Swofford, of counsel), for appellee The SWA Group.

Ash, Anos, Harris & Freedman, of Chicago (George J. Anos, Bruce T. Logan, and David P. O'Neill, of counsel), for appellees Arthur M. Wolf and Bernard R. Wolf.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

In June 1974, Richard Thomas Prince, a 15-year-old, drowned in a retention pond in Hazel Crest, Illinois. A four-count complaint was filed by Gordon Prince, decedent's father and administrator of his estate. The complaint named as defendants Arthur M. Wolf, Bernard R. Wolf, The SWA Group, a California corporation, and parties who were dismissed prior to trial. Counts II and IV of the complaint were dismissed and defendants answered the remaining two counts. Count I alleged that defendants Arthur Wolf and Bernard Wolf were negligent in failing to

place signs and properly supervise or fence and barricade the retention pond. Count III alleged the negligent design of the artifically created body of water by the Wolfs and The SWA Group.

Defendants responded to the complaint by filing motions for summary judgment. On August 27, 1979, the trial court, upon finding the retention pond was not a defective structure or dangerous agency and defendants owed no duty to plaintiff, entered an order granting summary judgment for defendants.

The sole issue on appeal is whether the trial court committed reversible error when it ruled that defendants owed no duty to plaintiff's decedent as a matter of law.

We affirm.

Deposition testimony provided most of the evidence. Ramon Prince testified that on June 12, 1974, he, his brother, Richard (the decedent), and five other boys wanted to go swimming. He said they walked to the water retention pond at the condominium complex known as Village West, located in the village of Hazel Crest, Illinois. The boys began wading in the pond. They were doing so for approximately 20 minutes when two of them and Richard swam toward the opposite shore. Two of the boys observed that as Richard approached the bank of the pond he began struggling. They attempted to rescue him; however, by the time they had moved him to within a short distance of the bank, his body sank in the water.

Ramon and Richard had never swum in the pond at Village West prior to the day of the drowning. The boys' parents had warned them against swimming in "mudholes" such as the retention pond. The boys did not have anyone's permission to swim there.

Ramon testified that on the day of the drowning there were no signs or fences around the pond. He said he had seen other children wade in the ponds prior to the day of the drowning.

Jeffrey Shepard, one of the boys who was with Richard, gave a deposition and submitted a sworn affidavit. The affidavit stated, in pertinent part, that Jeffrey swam in the same area where Richard drowned; that Jeffrey attempted to rescue Richard; that where they entered the lake the water was shallow but near the opposite shore it was deep; that Jeffrey swam in the same area on prior occasions; and that no signs were posted indicating a variance in the depth of the water.

Arthur Wolf also testified by deposition. He stated that the three artificial bodies of water on the complex grounds were retention ponds required by the Metropolitan Sanitary District of Greater Chicago. The SWA Group designed the ponds. The designs were approved by the village of Hazel Crest. Thereafter, private firms completed engineering plans and excavation work on the ponds. The ponds covered 11 acres.

They were constructed to accommodate ground and storm water. They were not designed for sewage disposal.

Arthur Wolf further stated that prior to the drowning, he thought no swimming had taken place in the ponds because there were signs prohibiting swimming and the water was dirty. He did not recall whether signs were posted on the day of the drowning. He said there were no fences or guards at the site in question.

The village of Hazel Crest required that a certain level of water be maintained in the lakes and that wells should be dug for that purpose. Wells were never dug because the water level of the lakes had been constant. The depth of the deepest part of the pond in which Richard drowned was approximately 8 feet.

Bernard Wolf also testified by way of deposition. His testimony was substantially the same as that of Arthur Wolf. He did not know whether signs prohibiting swimming were posted near the ponds. He stated he never saw people in the ponds.

At issue is whether defendants owed any duty under the applicable principles of negligence. A leading case that addresses the issue of duties imposed upon owners and occupiers of land is *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. In establishing a rule, the Illinois Supreme Court said:

> "It is generally true, * * * that an owner or one in possession and control of premises is under no duty to keep them in any particular state or condition to promote the safety of trespassers or others who come upon them without any invitation, either express or implied. [Citations.] It is also established that infants, as a general rule, have no greater rights to go upon the land of others than adults, and that their minority of itself imposes no duty upon the occupier of land to expect them or prepare for their safety. [Citations.] It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." *Kahn*, at 625.

Plaintiff contends the retention pond was a defective structure and a danger to children within the meaning of *Kahn* and, therefore, the exception to the general rule should be invoked.

Defendants respond that plaintiff has failed to present affidavits or pleadings which could be construed as showing the pond to have been a defective structure or dangerous agency. Defendants cite the case of *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177. The facts in *Corcoran* involved the accidental death of a child who fell into an open ditch. The supreme court expounded upon its rule in *Kahn* when it said:

"Under *Kahn*, a duty which would not be imposed in ordinary negligence will be imposed upon the owner or occupier of land only if such person knows or should know that children frequent the premises *and* if the cause of the child's injury was a *dangerous* condition on the premises. If both these prerequisites are met, it is deemed that harm to children is sufficiently foreseeable for the law to impel an owner or occupier of land to remedy the condition.
    * * *

* * * [T]he *Kahn* principle should not be construed to impose a duty on owners or occupiers to remedy conditions the obvious risks of which children generally would be expected to appreciate and avoid. Even if an owner or occupier knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common conditions. As this court has observed:

'It is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon. The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself.' *Driscoll v. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 79.

The law recognizes that children, especially those of tender age, might conceivably be injured by the most innocuous of conditions. As expressed in the comments accompanying section 339 of the Restatement (Second) of Torts:

'There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.' (Restatement (Second) of Torts sec. 339, comment j, at 203 (1966). Also see Prosser, Torts sec. 59, at 366-73 (4th ed. 1971).)

Unless an owner or occupier has reason to know that children of very tender age are likely to roam unattended onto the premises,

the law will impose a duty on the owner or occupier only to remedy conditions which are dangerous to children generally." (*Corcoran*, at 326-27.)

With regard to pleading, the court said:

"[T]he burden rests with the plaintiffs to allege sufficient relevant facts to describe the condition in order for the trial court to conclude that the condition exposes children to risks greater than those which normally attend their daily lives." *Corcoran*, at 328.

■■ Thus, the *Kahn* doctrine is clarified by the court's ruling in *Corcoran*. A plaintiff must allege facts which describe or from which can be inferred a condition that exposes children to extraordinary risk of harm.

Seeking to establish the retention pond as a dangerous agency, plaintiff presented the affidavit of Jeffrey Shepard who swam along with Richard just prior to the drowning. As we read the affidavit, the significant references to the nature of the pond appear to be the following: "That the place where he [Shepard] and decedent first entered the lake was shallow near the shore whereas the area near the opposite shore where the decedent drowned was deep." And: "That no signs were posted prohibiting swimming in the artificial lake at Village West."

■■ In our view, plaintiff in the case at bar has failed to allege a dangerous condition as defined by the supreme court. The body of water did not present an extraordinary risk of injury to children generally. Clearly, any body of water has the potential to contribute to a drowning. In addition, the variance in the depth of water in this case is not sufficient to establish a dangerous condition. See *Hendricks v. Peabody Coal Co.* (1969), 115 Ill. App. 2d 35, 253 N.E.2d 56.

The uncontroverted facts of the case are that seven boys had been wading in a pond for a short time before three of them, including Richard, decided to swim across to the opposite side. Richard, in spite of rescue efforts, did not complete the swim to the other side. The two other boys survived. In this case, the risk of drowning is one which the decedent in particular, and children generally, would be expected to recognize. Therefore, no duty was owed by defendants.

It is the established rule in Illinois that section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57) provides that summary judgment may be granted if the pleadings, depositions and admissions on file, together with any affidavits filed, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Even if the complaint and answer purport to raise an issue of fact, summary judgment is, nevertheless, appropriate if such issues are not further supported by evidentiary facts through affidavits or other proper materials. *Cohen v. Washington Manufacturing Co.* (1979), 80 Ill. App. 3d 1, 3, 398 N.E.2d 1202, 1203.

After careful review of the pleadings and affidavits submitted by plaintiff, we find there is no genuine issue as to any material fact (see *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147), and the trial court's grant of summary judgment was proper.

For the aforesaid reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.