KRISTEN NEWBY, a Minor, by Mary Newby, her Mother and Next Friend, Plaintiff-Appellant, v. LAKE ZURICH COMMUNITY UNIT, DISTRICT 95, Defendant-Appellee.

Second District   No. 2—84—0527

Opinion filed August 27, 1985.

REINHARD, J., specially concurring.

Donald T. Morrison, of Donald T. Morrison & Associates, of Waukegan, for appellant.

Louis W. Brydges, Jr., and George E. Riseborough, both of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Kristen Newby, a minor, by Mary Newby, her mother and next friend, appeals from the judgment of the circuit court of Lake County which granted the motion of the defendant, Lake Zurich Community Unit, District 95 (the district), to dismiss plaintiff's first amended complaint for failure to state a cause of action, pursuant to section 2—615 of the Civil Practice Law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—615.) She appeals, contending that the complaint stated a cause of action for wilful and wanton misconduct.

We initially affirmed the judgment of the trial court by an order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23). Subsequently, we granted the plaintiff's request for rehearing, defendant answered, and plaintiff replied. Upon our further consideration of the parties' original briefs and their briefs on rehearing in accordance with Supreme Court Rule 367(d) (87 Ill. 2d R. 367(d)), and the oral argument, we adhere to our original decision to affirm the judgment of the trial court.

Plaintiff filed a one-count first amended complaint which, in relevant part, alleged as follows:

"1. Plaintiff, KRISTEN NEWBY, is a minor, born on April 15, 1966, and brings this action by MARY NEWBY, her mother and next friend, and at all times herein alleged plaintiff was a student at Lake Zurich Community High School.

2. Defendant, LAKE ZURICH COMMUNITY UNIT, DISTRICT NO. 95, a body corporate and politic, is a community unit school district which owns, operates and maintains a public high school in the Village of Lake Zurich, Lake County, Illinois.

3. At all times herein alleged, there was a fieldhouse constructed on the playfield of defendant's premises, immediately adjacent to which there was a tree, and high school students on many occasions prior to the incident herein alleged had climbed the tree to gain access to the fieldhouse roof.

4. Defendant had knowledge that numerous high school children in the past frequented the vicinity and had climbed the tree to gain access to the roof of the fieldhouse and defendant, prior to the incident herein alleged, had caused the tree to be trimmed and altered so as to make climbing it more difficult.

5. The altered and trimmed tree in close proximity to the fieldhouse on a public school playfield constituted an extraordi-

nary risk of harm, and defendant knew or should have known that such circumstances were likely to cause injury to high school children.

6. The expense and inconvenience of remedying the condition by removing the tree or providing adequate guarding was slight compared to the risk of injury to the high school children.

7. Defendant was guilty of wilful and wanton misconduct by consciously and recklessly disregarding the rights and safety of others in that:

    a. It failed to remove the tree.

    b. It failed to provide any guarding device to prevent high school children from climbing the tree.

8. On or about October 21, 1983, plaintiff, KRISTEN NEWBY, climbed the aforesaid tree, intending thereby to gain access to the fieldhouse roof and while ascending the tree to gain position to transfer to the fieldhouse roof, slipped, was unable to regain footing or handhold, fell to the ground and was injured as a direct and proximate result of the aforesaid misconduct of the defendant."

The trial court dismissed the complaint on the basis of the authority of *Cope v. Doe* (1984), 102 Ill. 2d 278, and *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, finding that it was not sufficient to state a cause of action, and that the facts pleaded as a matter of law were not actionable. As noted, we initially agreed, by way of a Rule 23 order, with the judgment entered by the trial court. The Rule 23 order was withdrawn upon our grant of rehearing. Our decision there, however, like that of the trial court, was premised essentially on our view that the plaintiff's complaint failed to establish any legal basis for liability in that it failed to allege facts which showed defendant owed plaintiff a duty.

In her petition for rehearing, plaintiff advances several arguments. In the first of these, plaintiff emphasizes that the instant cause is not one premised on mere negligence. Rather, it is alleged that the defendant's act of trimming the tree amounted to wilful and wanton misconduct, an "independent tort" (*Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089), because it knew or should have known that the altered and trimmed tree in close proximity to the fieldhouse on a public school playfield constituted an extraordinary risk of harm likely to cause injury to high school children.

The distinction between an ordinary negligence cause of action

and a cause of action based on wilful and wanton misconduct is found in the differing allegations required as to the state of mind of the defendant at the time of the breach. "[A] count in ordinary negligence will indicate that defendant acted 'carelessly,' while a count for wilful and wanton misconduct will indicate that defendant acted with either intentional or conscious disregard of his duty to plaintiff." (*Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 492.) Wilful and wanton misconduct has been defined as "a course of action which shows either a deliberate intention to harm or an utter indifference to, or conscious disregard for, the safety of others." *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 943, citing *Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 336, and *Kapka v. Urbaszewski* (1964), 47 Ill. App. 2d 321, 324.

As we perceive the thrust of plaintiff's argument she contends that because wilful and wanton misconduct is "an independent tort" and because her complaint is pleaded solely in wilful and wanton misconduct, the question of the existence of defendant's duty is not at issue. Rather, the court must analyze the defendant's state of mind, and the issue is whether a cause pleaded in wilful and wanton misconduct may be dismissed on the question of the existence of a duty. Plaintiff asserts that the presence of a duty is "not at all necessary" to the imposition of fault for wilful and wanton misconduct. Illinois law, however, clearly holds to the contrary.

In *Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1094, a case upon which plaintiff's reliance is misplaced, the court states:

> "Wilful and wanton misconduct is essentially the separate tort of aggravated negligence. Dean Prosser explains:
> 'A different approach, at least in theory, looks to the actor's real or supposed state of mind. Lying between intent to do harm, which *** includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called "quasi intent." To this area the words "wilful," "wanton," or "reckless," are customarily applied *** They have been grouped together as *an aggravated form of negligence*, differing in quality rather than in degree from ordinary lack of care. *** They apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended. Thus, it is held to justify

an award of punitive damages, and may justify a broader duty, and more extended liability for consequences \*\*\*.' " (Emphasis added.) (Prosser, Torts sec. 34, at 184 (4th ed. 1971).)

Consistent with Prosser's explanation is our supreme court's discussion of the necessary elements of a wilful and wanton act:

" ' " \*\*\* Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. *An intentional disregard of a known duty necessary to the safety of the person or property of another,* and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness." ' *Chmiel v. Pierce* (1973), 9 Ill. App. 3d 130, 132-33, 291 N.E.2d 862, 864, quoting *Bartolucci v. Falleti* (1943), 382 Ill. 168, 46 N.E.2d 980." (Emphasis added.) *Morrow v. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1094-95.

■ To sufficiently plead wilful and wanton conduct, a plaintiff must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the plaintiff's injury. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 944; *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 385; *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1004.) The mere conclusional allegation of wilful and wanton misconduct is not sufficient; facts must be alleged from which the law would raise a duty, and a showing that the omission of such duty resulted in injury. *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 439.

■ Plaintiff suggests that if the court finds contrary to her position that "duty simply cannot logically be a part of the concept of wilful and wanton misconduct," which we have so found, then the court must proceed to a determination of whether the defendant here had a duty to remove the tree and, correlative to that determination, must analyze how the concept of appreciation of the risk applies to the case. We find the facts alleged in plaintiff's first amended complaint fail to establish the existence of a legal duty owed to the plaintiff by the defendant and, therefore, the complaint was properly dismissed.

Prior to our supreme court's decision in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, the concept of "attractive nuisance" deter-

mined the liability of an owner or occupier of land upon which a child was injured. Since the *Kahn* decision, the attractive nuisance doctrine no longer is the law in Illinois. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 285; see *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 325-26.) Under the holding of *Kahn*, the customary rules of ordinary negligence are applicable now in cases dealing with personal injuries to children. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 624; accord, *Cope v. Doe* (1984), 102 Ill. 2d 278, 285-86.) The significance of the *Kahn* decision is that it discarded the notion that a dangerous condition had to lure children onto the premises and established instead the rule that the foreseeability of harm to the child is the yardstick or touchstone by which liability is to be determined. *Cope v. Doe* (1984), 102 Ill. 2d 278, 285; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 325-26.

■ A duty that would not be imposed in cases of ordinary negligence will be imposed upon an owner or occupier of land for the personal injuries a child suffers on the premises only if the landowner or person in possession knows or should have known that children frequent the premises *and* if the cause of the child's injury was a dangerous condition on the premises. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) If both of these elements are satisfied, the injury to a child is deemed sufficiently foreseeable for the law to impose a duty on the owner or the occupier of the land to remedy the dangerous condition. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) For purposes of this standard, a "dangerous condition" is one that is likely to cause injury to a child who, by reason of his or her immaturity, might not be capable of comprehending or avoiding the attendant risks. *Cope v. Doe* (1984), 102 Ill. 2d 278, 286; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.

■ If, however, the condition involves obvious risks that children generally would be expected to appreciate and avoid, there is no duty to remedy the condition. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) No action may be maintained if children of a similar age and experience as the plaintiff are capable of understanding the danger involved. (*Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 296.) Since children are expected to avoid dangers that are obvious, there is no reasonably foreseeable risk of harm. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286.) Even in circumstances where an owner or occupier of land is aware that children frequent the premises, the law does not require

the landowner or possessor of land to protect against the omnipresent possibility that children will injure themselves on obvious or common conditions. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326; *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 508.) In short, although the foreseeability of harm to the child is the test for ascertaining liability, the law·does not allow recovery for injuries that are caused by an obvious danger. *Cope v. Doe* (1984), 102 Ill. 2d 278, 286.

In the present case, the plaintiff alleges that although the tree by itself did not constitute a dangerous condition, the fact that the tree was located close to the defendant's fieldhouse roof created a dangerous condition of which the defendant should have been aware. An instrumentality, though not in itself dangerous, may become so when joined with other nondangerous instrumentalities or surroundings. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 940-41; *Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 739; *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 528-29; *Novak v. C.M.S. Builders & Developers*·(1980), 83 Ill. App. 3d 761, 763-64.) A condition in its surroundings may so enhance the risk to unsuspecting children as to constitute a danger to them. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 941; *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 529.) An instrumentality or product does not become inherently dangerous, however, merely because there is an abuse of it, or it is used for a wrongful purpose. (*Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 529; see also *Donehue v. Duvall* (1968), 41 Ill. 2d 377.) The burden is upon the plaintiff to allege facts which demonstrate that the combination of surroundings creates a risk greater than those to which children are exposed in their everyday lives. *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 328; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 941.

We find plaintiff has failed to sustain her burden in this regard, and that *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, is dispositive.

Contrary to plaintiff's argument, *Corcoran* was not strictly a negligence cause. It, too, involved a cause of action for wilful and wanton misconduct. The plaintiff there was a two-year-old child who fell into a ditch in a park area near his home and suffered severe brain damage. With regard to his wilful and wanton count against the county and the village, the plaintiff there argued that despite prior notice and knowledge of the condition of the ditch ("a deceptively steep, unguarded and dangerous slope;" "an irregular embankment littered with debris and rubbish;" "an unnaturally pocketed bed") and of drownings in the ditch, defendants failed to act to remedy the condi-

tion of the ditch. In response to this argument, the court wrote:

"Such argument is belied by plaintiffs' own pleadings wherein it is set forth that drownings occurred prior to 1971, in which year defendants 'changed the direction and flow of the ditch' and 'filled in portions of the ditch.' *Though plaintiffs alleged that the work done on the ditch created its allegedly hazardous condition, no allegations are made that, subsequent to this work, defendants had notice or knowledge of any hazards or of any drownings relating to the ditch. Without such allegations, the wilful and wanton count merely realleges a cause of action in ordinary negligence,* \*\*\*." (Emphasis added.) 73 Ill. 2d 316, 329-30.

Plaintiff's complaint here likewise is bereft of any allegations that defendant had notice or knowledge of any hazard relating to the *trimmed* tree nor, in fact, are there any allegations that the *untrimmed* tree caused any injury. As such, it appears the district's trimming of the tree was prompted only by its knowledge that the children were using it as a "conduit" to the fieldhouse roof, a practice the district seemingly sought to prevent by its act of trimming it. No facts are alleged from which it might be inferred that the district knew or should have known that the tree as trimmed somehow perversely increased rather than diminished the tree's potential risk of harm as a "conduit."

A second argument advanced by plaintiff is that the district, a public body, unlike other owners of land, has a special duty and responsibility to know its premises, and if anything there is dangerous the way children use it, there is a duty either to fix it, to remove it, or to keep the children off it. In support of her argument that defendant owed her a duty because of its actual knowledge of the use being made of the tree, plaintiff relies on *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400. Plaintiff's reliance is again misplaced, as she fails to note that the decision there was reversed, in part, on the point advanced here. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158.) In *Curtis*, the plaintiff was a passenger in a car which struck a speed sign used as a "quarter-mile" clocking post by speeding autos. The complaint alleged the municipal government involved knew this, but did not move the sign or construct it of "break-away" material, thus permitting young people to continue to utilize the sign in their speed clocking activities, and thereby creating and maintaining a dangerous condition. The appellate court agreed that local municipal entities have a duty to maintain property in a reasonably safe condition. The court wrote:

"When a municipality adopts a plan or design for improvements of public property, the Local Governmental and Governmental Employees Tort Immunity Act, after exculpating the governmental unit from liability generally provides (Ill. Rev. Stat. 1977, ch. 85, par. 3—103(a)):

'The local public entity is liable, however, *if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.*' (Emphasis added.)" *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 404.

Focusing on the defendants' actual knowledge that the sign post was used for speed clocking, the appellate court reversed the trial court's dismissal of count II of the complaint, finding that it could not be said that loss of control and collision with an object was a reasonably unforeseeable consequence under the facts alleged, as a matter of law.

In reversing that judgment, the supreme court determined it could not agree that the precise location of a sign post constituted a "plan or design" within the intendment of section 3—103 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act). Moreover, the court determined that the language of section 3—102(a) of the Act evidenced a legislative intent to extend a duty of care only to those persons by whom the local government intended the property to be used. That section provides:

" '(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition.' (Ill. Rev. Stat. 1977, ch. 85, par. 3—102(a).)" *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 164.

Consequently, the court determined that, "[a]s a passenger in a speed-clocking automobile, [plaintiff] cannot be said to fall within the class of motorists by whom defendant's highways were intended to be used." 98 Ill. 2d 158, 165.

■ The complaint at bar is devoid of any allegations whatever as to the circumstances surrounding the occasion of plaintiff's injury.

Plaintiff's reply on rehearing, however, indicates that "the instrumentality was well known to the school board to be used by the children to climb secretly and at night to paint graffiti on the fieldhouse roof." If such was the case, plaintiff, like the plaintiff in *Curtis*, could not be said to "fall within the class" of persons by whom the district's grounds were intended to be used. *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, cited by plaintiff as additional authority, lends no support to her argument that the district owed her a special responsibility because it owned and operated real estate "where children congregate intensely." Plaintiff argues that "parents have a right to expect that those in charge of [school property] have a duty to use reasonable care to see to it that no danger befalls the children, despite children's known predilections to get into trouble." In *Nelson*, the plaintiff, a 10-year-old boy, was seriously burned after a discovered spool of copper wire was tossed into the air either by himself or his playmate while he was holding on to one end of the wire. An electric current either arced from nearby power lines to the copper wire or the wire actually contacted the power lines, causing injury to the plaintiff. In reversing the trial court's dismissal of counts I and II (negligence—Commonwealth Edison/park district) and counts IV and V (wilful and wanton misconduct—Commonwealth Edison/park district), the appellate court considered that the plaintiff was injured in a public playground, where the defendants:

"should have reasonably anticipated both the presence of children and their creative and innumerable playtime activities; no express notice is necessary where these objective facts suffice to put a defendant on notice of plaintiff's proximity to the electrical wires. Young Nelson was rightfully in a public area which was designated as a playground for children of all ages. If defendant Edison chose to continue its dangerous activities such as the transmission of high voltage electricity in close proximity to an area which they have leased to a park district, it must be charged with a duty of protection commensurate with the risks involved." *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 665.

As noted, plaintiff's complaint fails to allege any facts concerning the circumstances surrounding the occasion of plaintiff's injury. Given the statement made in plaintiff's own brief, it appears likely that plaintiff was not "rightfully in a public area," nor was she engaged in an activity which should have been reasonably anticipated by the district. That aside, even if the knowledge ascribed to the district about students using the tree in the past to gain access to the fieldhouse

could be viewed as a type of "express notice," nevertheless, there is an absolute dearth of facts showing the district had any knowledge that students still climbed the tree *after* it had been trimmed nor, in fact, does plaintiff's complaint allege any facts from which it might be inferred that the district should reasonably have anticipated the students would continue to try to gain access to the fieldhouse despite the preventative trimming.

For these same reasons, plaintiff's argument seeking to impose liability upon the defendant under section 343 A of the Restatement is unavailing. (Restatement (Second) of Torts sec. 343 A (1965).) That section is a corollary to section 343 of the Restatement, and they are to be read in conjunction. Together, they provide:

"Sec. 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Sec. 343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated." Restatement (Second) of Torts secs. 343, 343 A (1965).

Plaintiff argues in her brief that despite the fact it is obvious to high school children that there is a risk of harm in climbing a tree, the school should have anticipated that they would climb the tree anyway in order to get to the fieldhouse roof. No facts are alleged, however, from which such an inference may be drawn. The comments to section 343 A of the Restatement suggest several instances in which

there might be reason to expect harm despite the obviousness of the danger:

"[F]or example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts sec. 343 A, Comment f, at 220 (1965).

No facts are alleged in plaintiff's complaint which might suggest that her failure to avoid the obvious risk of climbing the trimmed tree would fall within one of the noted examples, or one similar thereto.

■ Likewise, the proximity of the tree to the fieldhouse does not *per se* render the tree a "dangerous condition." As noted, plaintiff argues that the location of the tree close to the fieldhouse operates to strip the tree of its protection under the "natural object" theory, citing in support *Smith v. Springman Lumber Co.* (1963), 41 Ill. App. 2d 403. Plaintiff misstates the facts presented by that case, however, in that it was an unused, rusted-out old oil tank which the defendant knew was used by children in order to allow them to climb into an adjacent tree, and not vice-versa. The court in *Smith*, which was a negligence case, affirmed the judgment sustaining the jury's verdict in favor of the 7½-year-old plaintiff, who was injured when he slipped and fell off the tank. In so affirming, the court considered the verdict was justified in view of the defendant's knowledge that the children played on the tank, the probability of the injury, the children's tender years, their incapability of appreciating the risk involved, and the small cost to remedy the danger. In the case at bar, plaintiff alleges only the conclusion that defendant knew or should have known that the trimmed tree in close proximity to the fieldhouse constituted an extraordinary risk of harm. There is no allegation the defendant knew the children were still climbing the tree after it was trimmed. Also, the ability of the 17-year-old plaintiff here to appreciate the risk involved in climbing the tree certainly cannot be compared with that of the 7½-year-old plaintiff in *Smith*. The instant cause, which purports to state a cause of action for wilful and wanton misconduct, is further distinguishable from *Smith* in that the defendant here *did* take steps to prevent continued access to the fieldhouse roof via the tree by trimming it. In the absence of any allegations that, subsequent to that work, the defendant had notice or knowledge of any hazards relating

to the tree, the complaint merely alleges a cause of action in ordinary negligence which cannot be sustained. *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 330.

Plaintiff argues at length that if the question of her appreciation of the risk of climbing the tree is applicable at all in a cause of action sounding in wilful and wanton misconduct, it is a matter for the trier of fact under the causation element, and not for the court under a duty element.

■ Plaintiff's argument, a new one presented on rehearing which need not be entertained (87 Ill. 2d R. 367(b); *People v. Mallett* (1970), 45 Ill. 2d 388), inextricably confuses the concept of "appreciation of the risk" with the defense of "assumption of the risk." Assumption of the risk, in the secondary sense in which plaintiff here argues it, is "where the plaintiff voluntarily enters into some relation with the defendant, with knowledge that the defendant will not protect him against the risk. *** [T]he legal result is that the defendant is simply relieved of the duty which would otherwise exist." (Prosser, Torts sec. 68, at 440 (4th ed. 1971).) "Appreciation of the risk," on the other hand, is a factor in determining foreseeability in the context of the court's determination of whether a duty on the part of the defendant exists. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286-87.) The rationale for the rule that there is no duty to remedy a condition which presents an obvious risk is that children are expected to avoid dangers which are obvious; hence, there is no reasonably foreseeable risk of harm and no duty to remedy the condition. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286.) "[D]uty is traditionally an issue for the court, whereas assumption of risk is a jury question in all but the clearest cases." Prosser, Torts sec. 68, at 455 (4th ed. 1971).

The complaint at bar was dismissed for failure to state a cause of action; specifically, because the facts alleged failed to raise a duty on the part of the defendant. Although foreseeability is also a factor in the jury's proximate cause determination (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 658-59), the plaintiff's "appreciation of the risk" here was properly considered by the court as one of the factors of foreseeability in making its duty determination.

■ Plaintiff's final argument is that the district should be held liable for reasons of public policy. We believe the strongest expression of public policy in this regard may be found in the statutes enacted by the legislature, the public's elected representatives. (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 1015.) Those statutes evidence a legislative intent to limit the premises tort liability of local public entities, such as the district here, to only those instances in

which the local entities or their employees are guilty of wilful and wanton negligence proximately causing the injury. (See Ill. Rev. Stat. 1983, ch. 85, pars. 1—206, 3—102, 3—103, and 3—106.) We believe the court's judgment of dismissal of the complaint was entered in accordance with the public policy of the State of Illinois.

For the reasons set forth above, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

HOPF, J., concurs.

JUSTICE REINHARD, specially concurring:

I agree with the result reached in the majority opinion, but specially concur because I believe the analysis should simply focus on plaintiff's failure to plead that she, by reason of her age and immaturity, could not comprehend and avoid the risk of harm alleged. (See *Cope v. Doe* (1984), 102 Ill. 2d 278, 286, 464 N.E.2d 1023.) There can be no recovery for injury caused by a danger found to be obvious because there is no duty to remedy that condition. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286, 464 N.E.2d 1023.) As I perceive plaintiff's argument, she contends that her allegations of wilful and wanton misconduct by the defendant school district are sufficient to impose liability on defendant even if she could comprehend and avoid the risk of harm. Such a contention is untenable in the light of *Cope v. Doe* and the authorities cited therein.

The duty owed to a child coming onto premises owned or in the possession and control of another, as first enunciated in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, arises only where "the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children." (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625, 126 N.E.2d 836.) And, as stated in *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177:

> "On the other hand, the *Kahn* principle should not be construed to impose a duty on owners or occupiers to remedy conditions the obvious risks of which children generally would be expected to appreciate and avoid. Even if an owner or occupier

knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common conditions." (73 Ill. 2d 316, 326, 383 N.E.2d 177.)

Thus, even an allegation of wilful and wanton conduct will not impose a duty if the condition causing the injury would be an obvious risk which the child would be expected to appreciate and avoid. Plaintiff's amended complaint failed to allege that by reason of her age and immaturity, she could not comprehend and avoid the risk of harm alleged, and, accordingly, was properly dismissed. It is evident, to me at least, that plaintiff, who was 17½ years old at the time of the accident, has attempted to avoid her obvious knowledge of the risk by attempting to create a theory of liability not recognized in previous cases.