MARILYN DURHAM, as Adm'r of the Estate of Randall C. Durham, Deceased, Plaintiff-Appellant, v. THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Defendant-Appellee.

First District (2nd Division) No. 85—2787

Opinion filed November 25, 1986.

Mark Novak, of Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago, for appellant.

Donald Hubert and James A. Roth, both of Donald Hubert & Associates, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff's fourth amended complaint charged defendant, Forest Preserve District of Cook County, a body politic and corporate, with wanton and wilful misconduct in the operation of Schiller Pond, where the decedent, Randell C. Durham, a 16-year-old, drowned. Defendant's motion for summary judgment was allowed. The sole issue presented for review is whether the trial court properly granted summary judgment.

On the morning of June 5, 1978, Randell C. Durham, decedent, and Robert Ross, both age 16, boarded a school bus to attend the Real School, an institution for delinquent children. They convinced the bus driver to let them off the bus close to Schiller Woods Forest Preserve, where they had an older friend purchase a quart of beer for Durham and a six-pack for Ross.

After finishing their beer, they decided to go for a swim in Schiller Pond. Schiller Pond was built as a flood control lake and had three "No Swimming" signs around its perimeter. Ross noticed one sign "not too far" from where the boys entered the water that warned "No Swimming." Schiller Pond was not an inviting pond for swimming because it had a mud bottom and contained leeches. It was a sunny day with the temperature in the 60's. The water was cold. In order to avoid the leeches, the boys carried a picnic table, located about 50 feet from the pond, to the pond and threw it in the water for a raft.

They asked two 16-year-old girls to join them on the raft, but they refused because the water was too dirty. The boys then floated out on the "raft" and began swimming. They began wrestling on the "raft," and both entered the water. Decedent grabbed onto the "raft," swam around, and then began to yell for help. Ross attempted to rescue him, but decedent, apparently in panic, fought him off. Decedent then sank into the water and Ross swam toward the shore, yelling for help. Two older men, who had been around the pond, jumped in the water and unsuccessfully attempted to locate decedent. Shortly thereafter, Forest Preserve District employees began dragging the pond in a row boat, and a helicopter and scuba divers were used to locate the body. When Durham's body was removed from the water, he was wearing long jeans.

The pond was from 2 feet to 7½ feet deep. There was no specific proof of prior drownings. However, Ross testified at his deposition

that someone told him that they heard of a prior drowning.

Defendant's motion for summary judgment was supported by the depositions of Robert Ross, the friend who was the swimming companion of the decedent; of Dennis Bargamian, the bystander who attempted to rescue the decedent; of Karl Weissbrodt, an employee of the Forest Preserve District who held the title of serviceman at the time of the drowning; of Gerald O'Connor, who was, during the relevant time, the superintendent of maintenance and operations of the Forest Preserve District; an affidavit of David McGinty, the fisheries biologist for the Forest Preserve District; and a diagram of the pond.

The trial court found an absence of duty on the part of defendant because the pond presented an "obvious and open danger" of which the decedent should have been aware.

Summary judgment should be granted by the trial judge "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.

It cannot be said that a 16-year-old high school student was not of an age that allowed him to be at large. We find that Schiller Pond presented an obvious and open danger of which decedent should have been aware of and avoided. Therefore, defendant owed no duty to decedent as a matter of law.

I

Plaintiff contends that the trial court erred in granting summary judgment based on the reasoning that as a matter of law defendant owed no duty to decedent. Defendant argues that summary judgment was appropriate because decedent fully appreciated and could have avoided the danger of entering Schiller Pond, and thus defendant owed no duty to decedent.

■■ In *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177, plaintiff brought an action to recover for injuries sustained by a two-year-old who fell into a ditch under defendant's control. Noting that the doctrine of "attractive nuisance" no longer applied, but that ordinary negligence standards controlled, the court referred to the "dangerous condition" rule, which held that an owner or occupier of land has a duty to remedy conditions which, although harmless to adults, are dangerous to children who foreseeably wander onto the premises. The court noted that a "dangerous condition" is one which is likely to cause injury to children generally, who, by reason of their age and immaturity, would not be expected to apprehend

and avoid the attendant risk. 73 Ill. 2d 316, 326, 383 N.E.2d 177.

■■ However, the court also noted that this "principle should not be construed to impose a duty on owners or occupiers to remedy conditions the obvious risks of which children generally would be expected to appreciate and avoid. Even if an owner or occupier knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common conditions." (73 Ill. 2d 316, 326, 383 N.E.2d 177.) Thus, the court determined that a duty will be imposed under ordinary negligence where an owner or occupier "knows or should know that children frequent the premises *and* if the cause of the child's injury was a *dangerous* condition on the premises." (Emphasis in original.) 73 Ill. 2d 316, 326, 383 N.E.2d 177.

The court cited to the Restatements (Second) of Torts, noting that "there are many dangers, such as fire and *water*, *** which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." (Emphasis added.) (*Concoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327, 383 N.E.2d 177, quoting Restatement (Second) of Torts sec. 339, comment *j*, at 203 (1966). The court affirmed the dismissal of the action on the basis that the ditch posed no foreseeable harm to children.

Three Illinois water cases indicate that a pond similar to Schiller Pond constitutes a danger that the decedent could appreciate.

In *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023, a jury verdict in favor of a drowned boy's mother was reversed by the appellate court, which reversal was affirmed by the Illinois Supreme Court. There, a seven-year-old boy drowned when he broke through a partially ice-covered, man-made retention pond used for recreational purposes on the grounds of a highly populated apartment complex designed to "attract families with children." (102 Ill. 2d 278, 281, 464 N.E.2d 1023.) The evidence showed that children chased their dogs on the ice, ice skated, fished, walked and slid on the ice and kicked wood around on the ice (102 Ill. 2d 278, 282, 464 N.E.2d 1023); that the manager of the complex said children could fish and ice skate on the pond, and that the defendants knew children used the pond for recreational purposes; and that the pond was so deep that one rescuer ceased his efforts "when the water level reached his shoulders" (102 Ill. 2d 278, 284-85, 164 N.E.2d 1023).

In *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 472 N.E.2d 1203, *appeal denied* (1985), 102 Ill. 2d 560, summary judgment was granted in favor of defendant where a nine-year-old

boy broke through the ice on a highly populated residential subdivision's man-made retention pond.

In *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 417 N.E.2d 679, defendant's motion for summary judgment was granted and affirmed on appeal where a 15-year-old boy drowned in a highly populated condominium complex's man-made retention pond.

The key fact in *Cope, Weber* and *Prince* resulting in nonliability was the absence of a duty because the children in each case could appreciate the risk. *Cope v. Doe* (1984), 102 Ill. 2d 278, 286, 464 N.E.2d 1023; *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 632, 472 N.E.2d 1203; *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 509, 417 N.E.2d 679.

In the instant case, the drowning occurred in an ordinary pond as it did in *Cope, Weber* and *Prince*. Interestingly, this pond should have had as an added repellent a quality of dirtiness and a bad smell.

Durham was 16 years of age and thus older than any of the children in *Cope* (7 years old), *Weber* (9 years old), or *Prince* (15 years old). Regarding age, appreciating the risk is an objective test which focuses on children of similar age and experience. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133.) Moreover, "any child of age to be allowed at large," is expected to appreciate an obvious and open danger. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327, 383 N.E.2d 177, quoting Restatement (Second) of Torts sec. 339, comment *j*, at 203 (1966). *Cf. Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023; *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 417 N.E.2d 679; *Barbre v. Indianapolis Water Co.* (Ind. App. 1980), 400 N.E.2d 1142, 1146; Prosser sec. 59, at 366-73 (3d ed. 1971).) Here, given the younger ages illustrated, Durham, at 16, would have greater maturity; moreover, given that he was on his way to high school when the incident started to unfold, he was old enough to be allowed at large.

This objective combination of facts is sufficient to establish that Durham could appreciate the open danger that Schiller Pond created.

■ Plaintiff attempts to distinguish the above cases by arguing that they involved retention ponds built for the purpose of collecting water; that there was no history of past drownings; that defendants had no prior knowledge of the ponds being used for swimming; and that the ponds were not located in a recreational park frequented by many visitors each year. However, as noted, Schiller Pond was built as a flood control pond, for the purpose of collecting water and not for swimming. The pond, like the one in *Cope*, was used for fishing. Also, plaintiff has not shown that there were any prior drownings at

Schiller Pond. Furthermore, defendant's knowledge of prior swimming is not relevant to the issue of duty, as noted by the *Corcoran* court. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326, 383 N.E.2d 177; see also *Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 482 N.E.2d 1061 (even where owner is aware of frequent use of property by children, law does not require him to protect against omnipresent possibility that children will injure themselves on obvious or common conditions), *appeal denied* (1985), 111 Ill. 2d 557.) Thus, under common law principles, the trial court properly found, as a matter of law, that defendant owed no duty to plaintiff's decedent. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.

## II

Plaintiff contends that defendants voluntarily undertook the responsibility of protecting the public because they posted "No Swimming" signs, there was an ordinance prohibiting swimming, and it is the employees of the Forest Preserve District's duty to enforce this ordinance. We find this argument unpersuasive.

■■ ■ The general rule is that there is no common law duty to members of the general public for a failure to enforce an ordinance. Liability only arises when a special duty is owed to the particular plaintiff different from that owed to the public at large. (*Lakeside Condominium "C" Association v. Fredian Developers, Inc.* (1985), 135 Ill. App. 3d 972, 973, 482 N.E.2d 665.) In the case before this court, defendant did not owe decedent any duty different than that it owed to the public at large. Since the Forest Preserve District did not owe any duty to the public for failure to enforce its no-swimming ordinance, we conclude that defendant did not owe any special duty to decedent.

## III

Additionally, defendant, as a self-insured Forest Preserve District, is a local public entity. It therefore enjoys the immunity granted to it under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*, par. 1—206). The Act specifies certain limitations on the liability of such bodies. (*Antiporek v. Village of Hillside* (1985), 135 Ill. App. 3d 871, 482 N.E.2d 415, *appeal denied* (1985), 111 Ill. 2d 553.) The Act provides, in pertinent part:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its

property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." (Ill. Rev. Stat. 1983, ch. 85, par. 3—102(a).)
Additionally, the Act further provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used as a park, playground or open area for recreational purposes unless such local entity or public employee is guilty of wilful and wanton negligence proximately causing such injury." (Ill. Rev. Stat. 1983, ch. 85, par. 3—106.)

■ Section 3—102(a) has been construed to extend a duty of care only to those persons to whom the entity's property was intended to be used. (*Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 102, 482 N.E.2d 1061 (high school student who climbed a tree to gain access to the fieldhouse roof at night to paint graffiti did not fall within the class of persons by whom defendant's grounds were intended to be used), *appeal denied* (1985), 111 Ill. 2d 557.) We find that under the Act, decedent was not within the class of persons defendant's property was intended to be used by. The record clearly establishes that Schiller Pond was built as a retention pond and was used for fishing, not swimming. Defendant did not intend its patrons to use the picnic tables as flotation or diving devices. Because defendant did not intend or permit its property to be used in such a manner, decedent was not within the class of persons defendant intended to use the property. Therefore, it follows that defendant did not owe any duty to decedent.

IV

■ The complaint, itself, is insufficient in that the allegations of wilful and wanton negligence are conclusory and not supported by the record. In order to successfully plead wilful and wanton conduct, a plaintiff must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the injury. (*Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 359, 490 N.E.2d 88.) The allegations contained in the complaint sound in negligence and cannot be characterized as wilful and wanton misconduct. See, *e.g., Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 485 N.E.2d 418, *appeal denied* (1986), 111 Ill. 2d 579.

Having considered the pleadings, depositions and affidavit con-

tained in the record, we conclude that defendant did not owe any duty to decedent as a matter of law. The granting of the motion for summary judgment was proper.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.