(No. 49859.—

MATTHEW JAMES CORCORAN, a Minor, *et al.*, Appellants, v. THE VILLAGE OF LIBERTYVILLE *et al.*, Appellees.

*Opinion filed November 22, 1978.*

Victor J. Piekarski and James J. O'Hagan, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, and Leo J. Sullivan III, of Sullivan, Smith & Hauser, Ltd., of Waukegan, for appellants.

Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan (Edward A. Puisis, of counsel), for appellee Village of Libertyville.

Judge, Drew, Cipolla & Kurnik, Ltd., of Park Ridge (Jay S. Judge, of counsel), for appellee Township of Libertyville.

Robert M. Bollman, David R. Quade and Kathleen C. Sweet of Diver, Bollman, Grach & Quade, of Waukegan, for appellee County of Lake.

MR. JUSTICE MORAN delivered the opinion of the court:

On January 23, 1974, Matthew James Corcoran, a two-year-old child, fell into a ditch in a park near his home and, as a result of the fall, suffered severe brain damage. Actions were brought in the circuit court of Lake County by the parents (plaintiffs) individually and as natural guardians of the minor against the village of Libertyville, the County of Lake, and the township of Libertyville. Plaintiffs sought to impose liability for the accident on the village as owner of the ditch in question and on the county and township for their role in managing, maintaining and controlling the ditch.

The second amended complaint contained four counts. Counts I and II, brought by the plaintiffs on behalf of the minor, alleged negligence and wilful and wanton

conduct, respectively. Count III was couched in language intended to bring it within the principles enunciated in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, which principles had given fresh meaning to the so-called "attractive nuisance" doctrine. Count IV was brought by plaintiffs, individually, for the emotional distress they suffered as a proximate result of the negligence of each defendant.

Pursuant to motions of each of the defendants to strike and dismiss the second amended complaint, the trial court entered an order which dismissed the complaint as to the county and township, and struck count II (wilful and wanton conduct) and count IV (emotional distress of the parents) of the complaint against the village. The trial court order granted plaintiffs leave to file a third amended complaint against the village. This complaint was brought, in two counts, by plaintiffs on behalf of the minor. Count I alleged negligence, and count II invoked the principles of the *Kahn* case. Again, the village moved to dismiss. The trial court denied the motion to dismiss but, pursuant to Supreme Court Rule 308(a) (58 Ill. 2d R. 308(a)), certified three questions for interlocutory appeal. The first question requested the appellate court to determine whether either count in the third amended complaint stated a cause of action. The other two certified questions concerned the applicability of various provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, pars. 2—105, 2—109, 2—110, 2—201, 2—207, 3—101).

Plaintiffs appealed from the trial court order which dismissed their second amended complaint against the county and township. The village appealed from the interlocutory order which denied its motion to dismiss the third amended complaint. The appellate court, consolidating the two appeals, affirmed the dismissal of the second amended complaint against the county and township and, by answering the first of the certified questions

in the negative, reversed the interlocutory order which had allowed the complaint against the village to stand. (49 Ill. App. 3d 818.) In so doing, the appellate court did not reach the second and third certified questions. We granted leave to appeal. Prior to oral argument in this court, plaintiffs and the township entered into a covenant not to sue. The county and the village remain as defendants for purposes of this appeal.

We note that the trial court, in dismissing the second amended complaint against the county but not against the village, apparently distinguished between the status of the county as manager, maintainer or controller of the ditch in question and the status of the village as owner of the ditch. We find no merit to such a distinction. It is firmly established in Illinois that a party that creates a dangerous condition will not be relieved of liability because that party does not own or possess the premises upon which the dangerous condition exists. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 620; *Stedwell v. City of Chicago* (1921), 297 Ill. 486, 489-90.) A party that creates a dangerous condition or is in control of premises on behalf of the owner or possessor is subject to liability, to the same extent as would be the owner or possessor, for injury to children caused by the dangerous condition. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 620; Restatement (Second) of Torts secs. 383-87 (1965).) Plaintiffs' second amended complaint alleged not only that the county managed, maintained and controlled the ditch, but that, in the summer of 1971, the county, with the permission of the village, actively caused the ditch's hazardous condition by filling in a portion of the ditch. In considering whether plaintiffs have stated a cause of action in either their second or third amended complaints, we, therefore, do not differentiate between the status of the county and the status of the village. For the purposes of this appeal and under the pleadings in this particular case, the liability, if

any, of the county and the village is coextensive.

Ever since the *Kahn* decision in 1955, the liability of owners or parties in possession and control of premises (hereinafter referred to as owners and occupiers of land) upon which a child is injured has been determined with reference to the customary rules of ordinary negligence. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 624; *Hendricks v. Peabody Coal Co.* (1969), 115 Ill. App. 2d 35, 41; *Skaggs v. Junis* (1960), 27 Ill. App. 2d 251, 258.) Generally, the owners or occupiers of the land are under no duty to keep their premises in any particular state or condition to promote the safety of persons who come upon the premises without invitation, either express or implied. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625; *Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 186-88.) This rule has evolved out of the notion that the law does not require an owner or occupier of land to anticipate the presence of persons wrongfully or unexpectedly on his land. The court in *Kahn*, however, recognized an exception where "the owner or person in possession knows, or should know, *that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land,* which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. [Citation.] " (Emphasis added.) *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.

The import of the decision was that it rejected the implication in the "attractive nuisance" doctrine that the dangerous condition had to lure children into trespassing

on the premises; it obviated the need for common law categories of trespasser, licensee and invitee as labels for children injured on the premises of another; it established the foreseeability of harm to children as the cornerstone of liability (also see *Hendricks v. Peabody Coal Co.* (1969), 115 Ill. App. 2d 35, 41); and it brought Illinois law into harmony with section 339 of the Restatement (Second) of Torts. (See Restatement (Second) of Torts sec. 339 (1965).) Under *Kahn,* a duty which would not be imposed in ordinary negligence will be imposed upon the owner or occupier of land only if such person knows or should know that children frequent the premises *and* if the cause of the child's injury was a *dangerous* condition on the premises. If both these prerequisites are met, it is deemed that harm to children is sufficiently foreseeable for the law to impel an owner or occupier of land to remedy the condition.

As *Kahn* sets forth, a dangerous condition is not that which creates an unreasonable risk of harm to the general class of persons who might frequent the premises. It is one which is likely to cause injury to the general class of children who, by reason of their immaturity, might be incapable of appreciating the risk involved. The essence of the *Kahn* principle is to impose a duty upon those owning or occupying land to remedy conditions which, although considered harmless to adults, are dangerous to children who foreseeably wander onto the premises.

On the other hand, the *Kahn* principle should not be construed to impose a duty on owners or occupiers to remedy conditions the obvious risks of which children generally would be expected to appreciate and avoid. Even if an owner or occupier knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common conditions. As this court has observed:

"It is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon. The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself." *Driscoll v. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 79.

The law recognizes that children, especially those of tender age, might conceivably be injured by the most innocuous of conditions. As expressed in the comments accompanying section 339 of the Restatement (Second) of Torts:

"There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." (Restatement (Second) of Torts sec. 339, comment *j*, at 203 (1966). Also see Prosser, Torts sec. 59, at 366-73 (4th ed. 1971).)

Unless an owner or occupier has reason to know that children of very tender age are likely to roam unattended onto the premises, the law will impose a duty on the owner or occupier only to remedy conditions which are dangerous to children generally.

Plaintiffs here sought to invoke the *Kahn* principle in count III of their second amended complaint and, again, in count II of their third amended complaint. Though plaintiffs averred that Matthew Corcoran was two years old at the time of the accident, they alleged that defendants knew or should have known that children generally, not specifically those of Matthew's tender age, frequent the premises. Consequently, we examine the question of whether defendants were under a duty to remedy those conditions which would be dangerous to children generally.

Plaintiffs hope to predicate liability on the assertedly

hazardous condition of a ditch. Ordinarily, a ditch, in and of itself, does not pose a danger or hazard. Under certain circumstances, the condition of a ditch in its surroundings may enhance the risks of injury to unsuspecting children and, in fact, be a danger to children. A ditch may pose such a danger because of its depth or because it is hidden from view or for other reasons. However, the burden rests with the plaintiffs to allege sufficient relevant facts to describe the condition in order for the trial court to conclude that the condition exposes children to risks greater than those which normally attend their daily lives. This, plaintiffs have failed to do.

In their complaints, plaintiffs characterize the ditch in question as having "a deceptively steep, unguarded and dangerous slope, which was eroded and caved in; an irregular embankment littered with debris and rubbish; an unnaturally pocketed bed, which unnaturally caused water to accumulate in the ditch at various depths; and an unreasonable and excessive accumulation of rubbish and debris in the ditch itself and about the approaches thereto." Plaintiffs further alleged that Matthew fell from the bank of the ditch and struck his head on the debris and rubbish. It is apparent that, in spite of plaintiffs' attempts to characterize the ditch as one with particularly hazardous attributes, the pleadings, stripped of their conclusional emphasis, allege nothing more than the risk of falling into a ditch, a risk which is incident to any common ditch or obvious depression in the ground and one which children generally would be expected to recognize and appreciate. Consequently, under the principles enunciated in *Kahn,* we hold that plaintiffs have failed to state a cause of action against the county in count III of the second amended complaint or against the village in count II of the third amended complaint.

Count I of the second amended complaint and count I of the third amended complaint were substantially similar

to the counts which invoked the *Kahn* principle, but were founded in negligence. In ordinary negligence, the common law status of Matthew Corcoran on the premises where he was injured becomes relevant in establishing the duty owed him. The highest duty imposed by law upon an owner or occupier of land to a person on his premises is that owed to an invitee. In reviewing the counts pleaded by plaintiffs in ordinary negligence, we will assume that Matthew Corcoran was an invitee to whom defendants owed a duty to maintain the premises in a reasonably safe condition and to warn of dangerous, nonobvious conditions. (*Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 157; *Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343, 347; Ill. L. & Prac. *Negligence* sec. 51 (1957); 1 J. Dooley, Modern Tort Law sec. 19.06 (1977).) Judged by this standard, we conclude, plaintiffs failed to state a cause of action. An owner or occupier of land will not be liable, even to invitees, for harm resulting from conditions which would prompt no anticipation of an unreasonable risk of such harm. (Prosser, Torts sec. 61, at 393 (4th ed. 1971).) As we have already determined with regard to the counts which invoked the *Kahn* principle, the ditch, as described in the pleadings, posed no reasonably foreseeable risk of harm to children. It would indeed be incongruous to conclude that a condition which did not pose any foreseeable risk to children did pose such risk to invitees. We hold, therefore, that plaintiffs have failed to state a cause of action in negligence in either count I of the second amended complaint or count I of the third amended complaint.

The wilful and wanton count in plaintiffs' second amended complaint must also fail. Plaintiffs here argue that, despite prior notice and knowledge of the condition of the ditch and of drownings in the ditch, defendants failed to act to remedy the condition of the ditch. Such argument is belied by plaintiffs' own pleadings wherein it

is set forth that drownings occurred prior to 1971, in which year defendants "changed the direction and flow of the ditch" and "filled in portions of the ditch." Though plaintiffs alleged that the work done on the ditch created its allegedly hazardous condition, no allegations are made that, subsequent to this work, defendants had notice or knowledge of any hazards or of any drownings relating to the ditch. Without such allegations, the wilful and wanton count merely realleges a cause of action in ordinary negligence, which, as we have discussed, cannot be sustained.

Finally, we find no merit to count IV of the second amended complaint which sought to recover for the emotional distress of the parents. In Illinois, to recover for emotional distress, the defendant's conduct which gives rise to the cause of action must be extreme and outrageous. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89.) Here, as in the other counts, plaintiffs alleged only the failure of defendants to adequately remedy conditions which we have held posed no foreseeable risk of harm. Such allegations fall far short of the severity of conduct required of a cause of action for emotional distress.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*