ALICE HOOTMAN, Special Adm'r of the Estate of Bobby Hootman, Deceased, Plaintiff-Appellant, v. HENRY DIXON *et al.*, Defendants-Appellees.

Second District   No. 83—1145

Opinion filed December 31, 1984.

Steven A. Wakeman, of Strodel, Kingery & Durree, of Peoria, for appellant.

Ole Bly Pace III, of Ward, Murray, Pace & Johnson, of Sterling, for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

This is an appeal from an order granting the defendant's motion for a judgment *n.o.v.* A wrongful death action was brought in the circuit court of Lee County by the plaintiff, Alice Hootman, as the special administrator of the estate of her deceased son, Bobby Hootman. The deceased was killed on August 13, 1981, when a small brick building with a concrete roof collapsed upon him. The building was owned by the defendants, Henry Dixon, Luke Morin, Art Eicholz and Paul Long, d/b/a Country Manor Estates, a partnership. The case proceeded to trial and on September 17, 1983, the jury returned a verdict of $35,100 for the plaintiff. The trial court entered judgment on the verdict on September 27, 1983, but granted the defendants' motion for a judgment *n.o.v.* on December 27, 1983. The plaintiff appeals the trial court's granting of the judgment *n.o.v.*

On about August 3, 1981, the Hootmans moved into a trailer park located on the north end of a 77-acre tract of land owned by the defendants. A brick building was located on the south end of this tract, approximately 1,000 to 2,000 feet from the trailer park. The building was small, approximately 10 by 10 feet to 12 by 12 feet, made out of red ceramic tile bricks with a four- to six-inch concrete roof, and was described as having holes in each of its walls large enough for two people to walk through. The area where the building was located was often played in by the local children, and the defendants, who were aware of this, made no attempt to keep the children out.

At some time between August 8 and August 11, 1981, the deceased and two of his friends, David Ackert and Michael Cook, began trying to knock the brick building down by using hammers and pieces of brick to knock out still more bricks from the building's walls. It is clear the boys' purpose was to cause the building to collapse. While it is uncertain how many bricks the boys knocked out or how long each day the boys spent knocking the bricks out, it is certain that the boys succeeded. At approximately 6 p.m. on August 13, 1981, the boys realized the building was beginning to collapse. Ackert and Cook were able to jump free of the building, but the roof collapsed on and killed Bobby Hootman as he tried to escape.

At the time of the accident, the deceased was 12 years old and his two friends were both 10 years old. Ackert and Cook realized and had discussed the dangers of someone being seriously hurt, *i.e.*, that they could sustain broken bones. The boys, in fact, had planned an escape route by clearing a path out of the building and placing a mattress just outside on which to jump. It is disputed, however, whether the deceased was present on the day that Ackert and Cook discussed these dangers. The deceased was present, however, at about 3:30 p.m. on the day of the accident when Karen Dale, a 15-year-old friend, told the boys to stay away from the building or they might get hurt.

The defendants argue that the brick building was not a "dangerous condition" (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625) as required for imposing liability on the property owners because the risk of the ceiling collapsing was an obvious risk and because the building was not inherently dangerous. Therefore, the defendants argue, they owed no duty to the deceased and are not liable for his death. We agree and therefore affirm.

Our supreme court in *Kahn* held that the proper basis for deciding such cases was the customary rules of ordinary negligence. Under the rules of ordinary negligence, a property owner is under no

duty to keep the premises in any particular condition to promote the safety of those who come upon the land without an invitation because the law does not require the owner to anticipate the presence of persons wrongfully or unexpectantly on the property. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 325.) Nor do infants, as a general rule, have any greater right to go upon the lands of others than do adults, and their minority imposes no duty upon the owner to expect them or take precautions for their safety. *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.

■ An exception is recognized, however, where the owner knows or should know that young children habitually frequent the area where a dangerous condition exists on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.) If all three prerequisites are met, it is deemed that harm to a child is sufficiently foreseeable for the law to impel an owner or occupier of land to remedy the condition. *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.

In the present case, the defendants admit that they knew children frequently played in the area of the building and that the cost of demolishing the building and hauling away the debris was only $250. The only remaining issue, therefore, is whether the brick building was a "dangerous condition."

■ "As *Kahn* sets forth, a dangerous condition *** is one which is likely to cause injury to the general class of children who, by reason of their immaturity, might be incapable of appreciating the risk involved." (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) "It is well settled that if the condition complained of presents *obvious* risks which children would be expected to appreciate and avoid, there is no duty to remedy that condition. The rationale for this rule is that, since children are expected to avoid dangers which are obvious, there is no reasonably foreseeable risk of harm." (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286). See *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316 (risk of falling into a visible drainage ditch); *Cope v. Doe* (1984), 102 Ill. 2d 278 (risk of falling through ice and drowning in partially frozen drainage ditch); *Fuller v. Justice* (1983), 117 Ill. App. 3d 933 (risk of standing on a log and having it roll out from underneath you).

■ Applying these principles to the present case, the brick building was not a dangerous condition, because the risk it presented was

an obvious risk. The evidence is undisputed that the deceased and two of his 10-year-old friends spent three to five days using hammers and bricks to knock still more bricks from the building's walls. It was the boys' conscious plan to knock out bricks from the walls until the building collapsed. Under these circumstances, the deceased must·be held to have appreciated the risk of serious injury from the building collapse as he stood inside and knocked out its walls.

The plaintiff argues that since several other neighborhood children had also knocked bricks out of the building's walls, we cannot say, as a matter of law, that the deceased should have appreciated the risks involved. However, our supreme court has acknowledged that "[t]here are many dangers, such as those of fire and water, or falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large" (Restatement (Second) of Torts sec. 339, comment j, at 203 (1965), cited with approval in *Cope v. Doe* (1984), 102 Ill. 2d 278, 286-87, and *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327), and yet many children tragically die or are seriously injured from these risks each year. Nor do we believe that a child must have been previously exposed to the precise type of risk involved before the child can be expected to appreciate it.

■ Another basis for our affirmance here is that the brick building did not constitute a "dangerous condition" in that it was not inherently dangerous. An object is not inherently dangerous, and thus not a "dangerous condition," merely because it is capable of being abused or wrongfully used.

In *Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, our supreme court held that a pile of trash which contained cans of paint and lacquer was not a dangerous condition, even though paint and lacquer are flammable, because they could be made dangerous only if ignited, and in *Donehue v. Duvall* (1968), 41 Ill. 2d 377, the supreme court held that a large pile of dirt was not a dangerous condition, even though the propensity of small boys to throw things such as dirt clods at each other is well known. In *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, this court held that the combination of a picnic table, bench and tree did not constitute a dangerous condition, even though the table and bench made it possible for children to jump onto a higher tree limb and swing on it.

Similarly here, the brick building was not an inherently dangerous condition. There was no evidence that the building and its concrete roof collapsed of their own accord while the three boys played quietly inside. Rather, the building collapsed only after the three boys, using

hammers and bricks, purposely knocked bricks out of its support walls until the walls could no longer support the weight of the concrete roof. It was this misuse of the building, an object which was not otherwise inherently dangerous, that caused the death of the deceased.

The plaintiff cites *Driscoll* to support her argument based on the court's statement:

> "Paint or lacquer is not explosive, nor is it inherently or intrinsically dangerous. It is of course combustible, as are any number of other materials ordinarily found on trash piles, and it can be made dangerous if ignited or brought into contact with fire. *But this is an unusual or extraordinary use, which a person cannot reasonably be required to anticipate in the absence of something to put him on notice of such a practice.* \*\*\* The cause of plaintiff's injury was not the paint cans or the trash pile but the fire with which he was playing." (Emphasis added.) (*Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 78.)

The plaintiff argues that since the holes in the building's walls had grown larger over time, the defendants should have known that children were knocking bricks out of the walls and, therefore, the defendants owed the deceased a duty to remedy the condition by tearing down the building.

We disagree for two reasons. First, even if it is foreseeable that an object on the owner's property might be abused or misused, that does not place a duty upon the property owner to remedy the condition if the condition is not inherently dangerous. In *Donehue*, a child was allegedly hit in the eye with a dirt clod containing broken glass which was taken from a pile of dirt that had been dumped in the defendant's backyard. In holding that the dirt was not a dangerous condition, the court stated:

> "A pile of dirt is unquestionably attractive to children, and the propensity of small boys to throw things at each other is a matter of common knowledge. But if the objects left accessible to them are not inherently dangerous, harm is not reasonably foreseeable. (See *Landman v. M. Susan & Associates, Inc.,* 63 Ill. App. 2d 292.) It is not enough that a possibility of injury exists. As this court observed in *Lance v. Senior,* 36 Ill. 2d 516, 518, 'After the event, hindsight makes every occurrence foreseeable, but whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also

be taken into account.' " *Donehue v. Duvall* (1968), 41 Ill. 2d 377, 379.

Similarly in this case, even if it was foreseeable that children might abuse the brick building, the defendants owed no duty to the deceased to remedy the condition, because the building was not inherently dangerous.

Second, to accept the plaintiff's reading of *Driscoll* would mean that one child's prior failure to avoid an obvious risk would make a later child's failure to avoid the same obvious risk foreseeable. In essence, after the first child, the owner would become the insurer of every child who came upon the property and would be required to child-proof the property.

Since the brick building was not a dangerous condition and the defendants owed no duty to the deceased to tear it down, they cannot be held liable for his death.

The court below properly granted judgment *n.o.v.*

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.