THE OLD SECOND NATIONAL BANK OF AURORA, as Special Adm'r of the Estate of Marc R. Weber, Deceased, Plaintiff-Appellant, v. AURORA TOWNSHIP *et al.*, Defendants-Appellees.

Second District   Nos. 2—86—0438, 2—86—0575 cons.

Opinion filed June 2, 1987.

Jon Yambert, of Lindner, Speers & Reuland, of Aurora, for appellant.

Francis A. Spina and Jay H. Tressler, both of Tressler, Soderstrom, Maloney & Priess, of Wheaton, for appellee Indian Creek Development Co., and D. Kendall Griffith, Hollis L. Webster, and Steven E. Nieslawski, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Aurora Township.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, The Old Second National Bank, as special administrator (the administrator) of the estate of the decedent, 14-year-old Marc R. Weber, brought suit against the defendants, Aurora Township (the township) and Hill, Brinda and Larson (the partnership), pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, par. 1 *et. seq.*) to recover for the decedent's drowning. In this consolidated appeal, the administrator appeals from the judgments of the circuit court of Kane County granting the defendants' separate motions for summary judgment and their motions to strike the affidavit of John R. Shack, Ph. D., which was attached to the administrator's response to the mo-

tions for summary judgment.

Decedent drowned on July 2, 1983, while inner tubing on floodwater in a ditch on the west side of and parallel to McClure Avenue in Aurora Township. Extraordinarily heavy rains the night before had caused the normally dry, grassy area of the ditch to become flooded. Decedent and a friend, Hector Martinez, were taking turns riding an inner tube on the current of the fast-moving water, which was flowing in a northerly direction. Decedent's 13-year-old brother, Kurt Weber, was also present, but he did not know how to swim and was not riding the inner tube. Decedent knew how to swim.

One boy would ride the inner tube to a point just a few feet south of the location of a 96-inch diameter corrugated metal culvert where the other boy was waiting and would catch him. The rider would dismount, remain at that location—thus becoming the catcher—while the other boy would take the inner tube south to the starting point and begin his ride. The culvert ran underneath McClure Avenue in an east-west direction; through this culvert flowed a minor waterway known as Indian Creek. The point of discharge of the culvert into the ditch was approximately 8 feet east of the property line of land owned by the partnership. The north edge of the culvert was intersected diagonally in a northeast-southwest direction by an abandoned railroad trestle which was partially on partnership property and partially on township property. The boys were familiar with the area of the ditch. According to Martinez' deposition, the culvert was covered with water on the day in question.

Each of the two boys had at least two turns riding the inner tube before the tragic incident occurred. According to the record, the inner tube got away from the decedent and floated north. Decedent, who was swimming at this point, not standing, let the current take him to the inner tube, which was bouncing off the side of the trestle. Grasping the inner tube with his right hand, the decedent began swimming against the current back toward Martinez, who was standing waist-deep in the water at a point south of the culvert. Suddenly, without a word, the decedent disappeared under the water when he was several feet from the culvert. Martinez immediately tried to find decedent in the water, but could not. Martinez then walked across the railroad trestle to see if he could see him, but he did not. Martinez and decedent's brother then sought help. Decedent's body was found downstream toward Farnsworth Avenue the next day.

Plaintiff alleged the township and the partnership had a duty to maintain their property in a reasonably safe condition, and, notwithstanding that duty, the township failed to place proper warning signs

in, or restrict access to, the area of the dangerous waters and failed to maintain a culvert that would provide for the safe flow of water. As to the partnership, in addition to its failure to place warning signs or restrict access to the area, it was alleged it had failed to maintain the railroad trestle so as to provide for the safe flow of water under it, failed to maintain its lands in such a manner that the danger of the flowing waters could not be appreciated by decedent or children of similar age and experience, and permitted the decedent and other children to play in the area in spite of the dangerous waters.

■ The partnership's motion for summary judgment alleged the decedent was not playing on its property but, rather, was on the township property; that there is no duty owed to children to protect against obvious water hazards; and that the partnership had no notice of the dangerous condition. The township's motion for summary judgment alleged the decedent would be expected to comprehend and avoid the dangerous condition and, therefore, no duty was owed. In the alternative, the township sought dismissal on the basis it was the Aurora Township Road and Bridge District which maintains and supervises the roads and culverts in Aurora and not itself. Although it is true the court's order here may be affirmed on any basis appearing in the record (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933; *Stern v. Stern* (1982), 105 Ill. App. 3d 805), the court's decision to grant the motion for summary judgment was based on the ground that neither party owed decedent a duty to protect him against an obvious water hazard, and it is on this basis we affirm its judgment.

■ The essential elements of recovery under the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, par. 1 *et seq.*) include a duty of defendant toward the decedent, a breach of that duty, and pecuniary damages resulting therefrom to persons designated by the Act. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 240; *Stansell v. International Fellowship, Inc.* (1974), 22 Ill. App. 3d 959, 962.) A party moving for summary judgment must affirmatively show that his right thereto is clear, free from doubt and determinable solely as a matter of law. (*Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011.) Summary judgment is properly granted if the pleadings, depositions and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376.) In reviewing the trial court's entry of summary judgment, the function of the reviewing court is to determine whether the trial court correctly ruled that no genuine issue of

material fact has been raised, and if none was raised, whether the court correctly entered judgment for the moving party as a matter of law. *Campbell v. Haiges* (1987), 152 Ill. App. 3d 246; *Comtrade, Inc. v. First National Bank* (1986), 146 Ill. App. 3d 1069.

■■ ■ The question of duty is a question of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552; *Christon v. Kankakee Valley Boat Club* (1987), 152 Ill. App. 3d 202; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042.) When an issue presents only a question of law, it is an appropriate issue for determination by means of summary judgment. (*Economy Fire & Casualty Co. v. Kubik* (1986), 142 Ill. App. 3d 906.)

Initially, we consider the administrator's assertion that the court erred in striking the amended affidavit of Dr. Shack. The affidavit was appended to the administrator's response to the defendants' motions for summary judgment for the asserted purpose of showing that, using an objective test for children of similar age, mental capacity and experiences to the decedent, the scene of the drowning created a dangerous condition that the decedent was not able to appreciate.

Defendants here have both characterized Dr. Shack's affidavit as an attempt by the administrator to create a material issue of fact when, as noted above, the existence of defendants' duty toward the plaintiff is a question of law to be determined by the trial court.

In his affidavit, Dr. Shack averred that he reviewed a survey and photographs of the flooded area, personally visited the scene, reviewed numerous of the decedent's academic and behavioral school records, and interviewed the decedent's parents. Dr. Shack concluded that decedent's "level of functioning and his ability to appreciate dangers were consistent with what would be expected from children from similar age, mental capacity, and experiences." Further, that "the interaction of the scene water, culvert, water current and railroad trestle, created a dangerous situation, indeed a trap, that a minor of age, mental capacity and experiences, similar to that of the decedent (Marc Weber), would not be able to appreciate."

The parties agreed that the test of whether young children are incapable of appreciating the risk attending the dangerous agency by reason of their immaturity is an *objective* one. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942.) They disagree, however, on whether Dr. Shack's affidavit and conclusion therein was based on this *objective* test or a *subjective* one. We are of the opinion that such an affidavit as that made by Dr. Shack is not appropriate for consideration in a case such as the one at hand, where the danger being considered is one of water, fire, or falling from a height, which under ordinary cir-

cumstances may reasonably be expected to be fully understood and appreciated by a child of the age of plaintiff's decedent. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316). However, if we are to consider the affidavit, we agree with the trial court that the affidavit was based on a subjective test, and it was properly stricken.

The *Fuller* court determined that *"no reasonable child* and especially a 14-year-old teenager would be unaware of a log's propensity to roll."* (Emphasis added.) (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942.) "As *Kahn [Kahn v. James Burton Co.*(1955), 5 Ill. 2d 614] sets forth, a dangerous condition is not that which creates an unreasonable risk of harm to the general class of persons who might frequent the premises. It is one which is likely to cause injury to the *general class of children* who, by reason of their immaturity, might be incapable of appreciating the risk involved." (Emphasis added.) (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) The administrator's amended complaint alleged that the decedent and other children were permitted to play in the area. Consequently, the question is whether the defendants were under a duty to remedy those conditions which would be dangerous to *children generally. Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327.

Clearly Dr. Shack's opinion on the ultimate issue here was not based on the "general class of children" but, rather, was based subjectively on the decedent and children *like him.* Moreover, as the township points out, Dr. Shack's affidavit fails to set forth the facts, as opposed to merely the sources, on which his conclusion is based. As such, it fails to comply with Supreme Court Rule 191. (87 Ill. 2d R. 191(a); *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 487.) Although it is true that an expert in Illinois is permitted to state an opinion on the ultimate issue (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584), the supreme court's decision in *Wilson v. Clark* (1981), 84 Ill. 2d 186, *cert. denied* (1981), 454 U. S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, holding that an expert may give opinion testimony at trial without disclosing facts underlying such opinion, did not overrule or modify the requirements of Supreme Court Rule 191 that affidavits cannot consist of conclusions but must set forth facts. *Kosten v. St. Anne's Hospital* (1985), 132 Ill. App. 3d 1073, 1079-80.

The administrator's argument that Dr. Shack's affidavit is objective since its language "is consistent with the IPI instruction of a minor's duty of care" (Illinois Pattern Jury Instructions, Civil, No. 10.05 (2d ed. 1971)) is entirely without merit.

In conclusion, for all the reasons stated, we find the court did not

err in striking Dr. Shack's affidavit.

We also find the court did not err in determining the partnership and the township had no duty toward decedent as a matter of law.

It is well settled that owners and occupiers of land are under no duty to keep their premises in any particular condition in order to promote the safety of persons who enter the premises without invitation. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 325; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.) Moreover, owners and occupiers of land owe no duty to child entrants merely by reason of their minority. (5 Ill. 2d 614, 625.) However, an exception exists:

> "where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children."
> (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.)

Only where all aspects of this exception exist is it deemed that harm to children is sufficiently foreseeable for the law to impel an owner or occupier of land to remedy the condition. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) Moreover, the *Kahn* principle is not construed to impose a duty on owners or occupiers to remedy conditions the *obvious risks* of which children would be expected to appreciate and avoid. (73 Ill. 2d 316, 326.) Save for children of a very tender age, one of the obvious risks which children would generally be expected to appreciate and avoid is water:

> " 'There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.' [Citations.]"
> *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327.

In *Cope v. Doe* (1984), 102 Ill. 2d 278, 286, the court observed that the rationale for the obvious risk rule is that "since children are expected to avoid dangers which are obvious, there is no reasonably foreseeable risk of harm. The law then is that foreseeability of harm to the child is the test for assessing liability; but there can be no recovery for injuries caused by a danger found to be obvious."

In comparison with cases in which static, ice-covered, and partially ice-covered bodies of water have been found to present obvious

risks (*Cope v. Doe* (1984), 102 Ill. 2d 278; *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628; *Prince v. Wolf* (1981), 93 Ill. App. 3d 505), certainly the danger of inner tubing on the open, rushing floodwater in the case at bar presented an obvious risk which the 14-year-old decedent could not have failed to appreciate. *Cf. Christon v. Kankakee Valley Boat Club* (1987), 152 Ill. App. 3d 202, 205 ("A flooded river is clearly within the category of obvious risks discussed in *Corcoran*").

The administrator contends, however, that the degree of danger presented by the instant flood conditions, culvert and railroad trestle is not a risk that children confront on a daily basis and, therefore, liability should be imposed. It argues that the combination of the current of water coming out of a 96-inch culvert and immediately sweeping under a railroad trestle elevated the danger to one greater than children normally confront.

■■■ Although we do not disagree that the risk posed by these combined conditions presented a greater risk to children than an ordinary body of water, we do not agree that the combination of these conditions rendered the risk unable to be appreciated by children generally.

The administrator's argument is based on the principle that an instrumentality, though not in itself dangerous, may become so when joined with other nondangerous instrumentalities or surroundings. (*Newby v. Lake Zurich Community Unit* (1985), 136 Ill. App. 3d 92, 99; *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 528-29; *Novak v. C.M.S. Builders & Developers* (1980), 83 Ill. App. 3d 761, 763-64.) In such a case, the burden is on the plaintiff to allege facts which demonstrate that the combination of surroundings creates a risk greater than those to which children are exposed in their everyday lives. *Newby v. Lake Zurich Community Unit* (1985), 136 Ill. App. 3d 92, 99.

It is clear that the base component of the "combination" asserted here is water, an instrumentality which in itself has been identified as " '[a danger] *** which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.' [Citations]." (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327.) "Clearly, any body of water has the potential to contribute to a drowning. *** [T]he risk of drowning is one which *** children generally, would be expected to recognize." (*Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 509.) The water here was, in the first instance, fast-moving floodwater. It was rushing toward a 96-inch culvert which itself was disgorging yet more floodwater in

the direction of the already glutted spillway beneath the railroad trestle. This combination of conditions could only have made the risk more, not less, obvious to "any child of an age to be allowed at large."

*Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, does not warrant a different result. There, the plaintiff charged that a creek in the public park which was frozen over with a thin layer of ice was completely concealed by a layer of snow, which made it impossible to discern the location of the creek. The court found that the "risks involved in a completely concealed creek in a park are not the type 'which children generally would be expected to recognize and appreciate.' [Citation.]" (*Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, 809.) None of the conditions which assertedly combined here to take the decedent's life was an unknown or "concealed" factor. Decedent was not only aware of the conditions, he flouted the immense danger they presented for the momentary pleasure of inner tubing.

We agree with the trial court's conclusion that the defendants named here had no duty to decedent to protect him from such an obvious risk.

For the reasons stated above, the judgments of the circuit court of Kane County are affirmed.

Judgments affirmed.

NASH and REINHARD, JJ., concur.