DEBORAH COLEMAN, as Personal Representative of the Estate of Kenneth F. Coleman, Jr., Deceased, *et al.,* Plaintiffs-Appellants, v. WINDY CITY BALLOON PORT, LTD., *et al.,* Defendants (Commonwealth Edison, Defendant-Appellee).

Second District   Nos. 2—86—0464 through 2—86—0468 cons.

Opinion filed August 31, 1987.—Rehearing denied October 9, 1987.

Dennis P. Ryan, of Gardner, Carton & Douglas, of Libertyville, for appellant Wendy Keating.

Richard B. Edelman and Gregory A. Adamski, both of Carponelli, Krug & Adamski, of Chicago, for other appellants.

No brief filed for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This case concerns a hot air balloon disaster which occurred on August 15, 1981, near Northwest Highway (Route 14) in Barrington Hills, Illinois. The balloon was carrying six passengers, including plaintiff Harry Evans and the decedents of plaintiffs Deborah Coleman, Sandra Ritter, Lily Ann Baker, and Wendy Keating. The balloon contacted defendant Commonwealth Edison's electrical power lines, ignited and crashed. Save for plaintiff Evans who jumped from the balloon, all aboard perished, including the balloon pilot, James A. Bickett. Plaintiffs brought this action for personal injury and wrongful death against Windy City Balloon Port, Ltd., the hired carrier from which port the balloon took off, and Dean Stellas, its owner; The Balloon Works, the designer, manufacturer and seller of the balloon; the Rego Company, the designer, manufacturer, and seller of the balloon's gas valves; and Commonwealth Edison.

In their amended complaint against Commonwealth Edison, plaintiffs alleged that Commonwealth Edison was negligent in its maintenance and installation of the power lines in that it (1) located power lines in an area trafficked by hot air balloons without adequate signs, lights or other warnings to enable balloonists to avoid said lines; (2) did not insulate the power lines in order to protect anyone who came in contact with them; and (3) did not install on the power lines circuits or other devices which would cut off the flow of electricity when the lines were severed. It was alleged that as a direct and proximate result of Commonwealth Edison's negligence, the various plaintiffs' decedents suffered their deaths, and plaintiff Evans suffered extensive personal injuries and conscious pain, and incurred substantial medical expenses and loss of wages.

Prior to trial, the court granted Commonwealth Edison's motion for summary judgment and denied plaintiffs' motion to reconsider or, in the alternative, to make the order immediately appealable. The

court's order became final and appealable on April 29, 1986, when the court approved the plaintiffs' pretrial negotiated settlement with defendants The Balloon Works and the Rego Company. Windy City Balloon Port, Ltd., was voluntarily dismissed without prejudice and without costs, pursuant to section 2—1009 of the Civil Practice Law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009.) The instant appeal is brought by the plaintiffs from the court's order granting Commonwealth Edison's motion for summary judgment and from its order denying their motion to reconsider.

At the outset, we note that we have no appellee's brief. Commonwealth Edison's attempt to file its brief *instanter* three weeks after the final extended filing date was rejected by this court, and there was no oral argument in this cause. (107 Ill. 2d R. 352.) Prior to the court's decision in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, appeals in which no appellee's brief was filed were often reversed *pro forma.* (63 Ill. 2d 128, 131.) *Talandis* eschewed this practice, stating that "[a] considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal." (63 Ill. 2d 128, 131.) Accordingly, "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal." 63 Ill. 2d 128, 133.

The five common law record volumes here contain over 2,100 pages of pleadings filed by the numerous plaintiffs and defendants, and plaintiffs' appendix, which this court had to order be filed in compliance with Supreme Court Rule 342(a) (107 Ill. 2d R. 342(a)), fails in most instances to indicate which pleading emanates from which party. Moreover, although the trial court allowed the filing of the depositions of 10 different persons in conjunction with the motion for summary judgment, those depositions have not been filed with this court. As a consequence, page references to such depositions in plaintiffs' memorandum supporting their answer to Commonwealth Edison's motion for summary judgment are meaningless, since the testimony they purport to support cannot be verified. Likewise, the "Statement of Facts" provided this court in plaintiffs' brief cannot be verified since the record references provided are to pages of the various parties' depositions which this court does not have.

■ Inasmuch as the record in this cause is essential to a resolution of the court's alleged error in granting Commonwealth Edison's motion for summary judgment, we do not find this case falls within the class of "simple" ones described by *Talandis*. In such instances, *Talandis* directs that we utilize the "other cases" approach outlined

therein, to wit:

> "In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

According to *Talandis*, citing *Harrington v. Hartman* (1967), 142 Ind. App. 87, 233 N.E.2d 189:

> " '*Prima facie* means "at first sight, on the first appearance, on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." [Citation.]' " *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 132.

In its motion for summary judgment, Commonwealth Edison alleged the duty of care plaintiffs claimed it breached was not recognized in Illinois law and was insufficient at law. Reference was made to a memorandum of law filed by Commonwealth Edison in support of its motion, but that document does not appear in the record on appeal. Commonwealth Edison's motion also alleged that the power lines in question were open, obvious, and clearly visible even to lay persons. Supporting that allegation were excerpts from the depositions of plaintiffs Keating, Baker and Evans. It was further alleged that the power lines were installed in accordance with the applicable Illinois Commerce Commission rules and regulations prescribing minimum height requirements for power lines. This was supported by attachment of the relevant rules and the affidavit of Frank Davis, a lineman employed by Commonwealth Edison, who measured the heights of the lines in question.

Plaintiffs jointly responded to the motion, stating that the sufficiency at law of their allegations was decided by the court when it denied Commonwealth Edison's motion to dismiss. They alleged that Commonwealth Edison was precluded from again arguing this issue. A copy of the court's order denying dismissal was appended in support. Plaintiffs alleged that even if the power lines were a known danger, Commonwealth Edison still had a duty to warn. They further alleged that Commonwealth Edison's erection of power lines substantially in excess of the required minimum height was a negligent act, and that pursuant to *Merlo v. Public Service Co.* (1942), 381 Ill. 300, proof of compliance with safety rules is not conclusive on the question of negligence.

Plaintiffs filed a memorandum in support of their response which

included numerous page references to the various depositions which the court allowed to be filed, but which were not excerpted and attached to the plaintiffs' memorandum or filed with this record on appeal. Attached to the plaintiffs' memorandum was another copy of the court's order denying dismissal and a copy of an advertisement for an orange, ball-like device known as a "Tana Wire Marker."

The references made to the depositions purported to establish Commonwealth Edison's knowledge and "active interest" in ballooning activity in that it "participated in seminars on ballooning and power lines," presented slide shows "regarding powerline contact with balloons," "billed balloonists for damages caused to its wires," and that the local Commonwealth district manager knew about a balloon/wire accident which occurred before the accident at issue. The deposition references also purported to establish that Commonwealth Edison "regularly insulates wires in areas where contact may occur with trees"; that insulation types vary depending on location, use and the elements being insulated; and that circuit breakers and cutoff fuses were installed in certain areas. The advertisement for the Tana Wire Marker purported to establish that such wire-marking warning devices are available.

Commonwealth Edison replied to plaintiffs' response, attaching excerpts from the various depositions taken in the cause establishing: that the collision occurred about 1½ miles from the balloon port; that some power lines are insulated by air space; that at the time of the accident, a storm was approaching from the Rockford area with wind velocities up to 37 miles per hour in the vicinity where the balloon collided with the power lines near a parking lot; that Dean Stellas, owner of the Windy City Balloon Port and an experienced balloon pilot, believed that the accident was caused by weather conditions and pilot error, specifically, a timing problem and an optical illusion; that Commonwealth Edison does provide weatherproofing of its lines in areas of dense tree cover, but the purpose of it is to prevent damage to the lines; that Commonwealth Edison did in fact provide circuit breakers on the power line in question; and that when the deponent arrived at the scene, the line was "locked out, tripped off, in other words."

Further excerpts showed: that the balloon pilot, Jamie Bickett, was acutely aware of the location of power lines and that he and other pilots used the power lines along Route 14 as a reference point; that the balloon pilots at the port, including Jamie Bickett, were aware of the danger of contacting the power lines; that balloon pilots are specifically taught to avoid power lines because contact could be disastrous; that it was the understanding of one of the hot air balloon-

ists who witnessed the accident that contact with power lines meant
" 'no chance of survival,' " and—by affidavit attached to the reply—
that Commonwealth Edison does not have and has never had a pro-
gram specifically designed to address the issues of electrical safety
and avoidance of its overhead facilities as they relate to the sport of
hot air ballooning.

In granting summary judgment for Commonwealth Edison, the
court found the danger of electricity was common knowledge and that
there is no duty to warn against a known danger where the presence
of the power lines was an open and obvious and, therefore, a known
danger. The court also found it was not foreseeable by the defendant
that an air balloon would be operated in severe weather causing the
balloonist to misguide it and crash into the power line. In denying
plaintiffs' motion to reconsider, the court further found, *inter alia*,
that to require Commonwealth Edison Company at the site of the im-
pact to have insulated the power line, to have provided circuit break-
ers, or to have warned balloonists, would in effect be tantamount to
imposing on Commonwealth Edison Company the duty to perform
those tasks throughout the entire system.

■ Plaintiffs contend in their brief—which we note is largely a
duplicate of their memorandum in support of their motion for recon-
sideration—that the trial court decided disputed factual issues and
misapplied the law. Specifically, plaintiffs contend, correctly so, that
*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 314, citing in part
*Rowe v. Taylorville Electric Co.* (1904), 213 Ill. 318, 322, sets forth
the relevant duty of care owed by the defendant to plaintiffs here:

" 'Electricity is a silent, deadly and instantaneous force, and
one who uses it for profit is bound to exercise care correspond-
ing to the dangers incident to its use. One duty is the insulation
of its wires, but that duty does not extend to the entire system.
\*\*\*'

From the very nature of its business, an electric company us-
ing highly charged wires owes the legal duty toward every per-
son who, in the exercise of a lawful occupation in a place where
he has a legal right to be, whether for business, pleasure or
convenience, *is liable to come in contact with the wires* to see
that such wires are properly placed with reference to the safety
of such persons and are properly insulated. [Citation.]" (Em-
phasis added.) *Merlo v. Public Service Co.* (1942), 381 Ill. 300,
314.

Plaintiffs assert that no one challenges the lawfulness of the oper-
ation of Bickett's balloon or its legal right to use the air space around

Route 14, but contends that the issue of whether Route 14 is an area where people "are liable to come in contact with the wires" is a question of fact which properly may only be decided by the finder of fact at trial. Plaintiffs argue that, "[o]nce legal duty is established, factual foreseeability and cause are *always* allowed to proceed to trial unless 'all the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors defendant \*\*\* no contrary verdict based on that evidence could ever stand.' *Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 131." (Emphasis in original.)

■■ It is precisely the lack of legal duty, however, on which the trial court based its judgment granting Commonwealth Edison's motion for summary judgment. As discussed in *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 659-66, "foreseeability" is a factor in both the court's duty determination—which is a question of law (*Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552; *Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62; *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064)—and the jury's proximate cause determination, which ordinarily is a question of fact (*Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781; *Ruffiner v. Material Service Corp.* (1985), 134 Ill. App. 3d 747). In order for a legal duty to exist upon which to predicate liability, the occurrence must be "reasonably foreseeable," *i.e.*:

> " 'Not what actually happened, but what the reasonably prudent person *would then have foreseen as likely to happen,* is the key to the question of reasonableness.' [Citation.] \*\*\* In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight." (Emphasis in original.) *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376.

■■ In addition to the factor of foreseeability, "[t]he judges' function in a duty determination involves complex considerations of legal and social policies which will directly affect the essential determination of the limits to government protection. \*\*\* [T]he imposition and scope of a legal duty \*\*\* involves other considerations including the magnitude of the risk involved in the defendant's conduct, the burden of requiring defendant to guard against that risk, and the consequences of placing that burden upon the defendant. [Citations.]" *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 662-63.

The *Nelson* court also noted that the duty issue is broad in its implication as opposed to the jury's negligence determination, which

must be strictly confined to the facts of the particular case. The court wrote:

"In other words, foreseeability is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it. In the majority of cases, *where varying inferences are possible from the facts*, a court should permit the jury to decide the foreseeability issue, including the foreseeability of the particular cause and effect of plaintiff's injury, as a factual matter in its proximate cause determination. [Citation.]" (Emphasis added.) *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 663.

■ In terms of the present cause, the issue of whether the area where the contact occurred was an area where people "are liable to come in contact with the wires" was, in the first instance, part of the trial court's duty determination, which it resolved against the plaintiffs when it granted Commonwealth Edison summary judgment. Apparently the court found the facts of the particular occurrence before it did not permit "varying inferences" to be drawn as to whether, as a policy decision, it would be unwise to require Commonwealth Edison to guard against it.

■ ■ Our sole function in reviewing the trial court's entry of summary judgment is to determine whether it correctly ruled that no genuine issue of material fact had been raised, and if none was raised, whether judgment was correctly entered as a matter of law. (*Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, 66-67; *Bauer v. City of Chicago* (1985), 137 Ill. App. 3d 228, 231; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 938.) A fact is material to the claim in issue when the success of the claim is dependent upon the existence of that fact (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 88), and it is the appellant who must demonstrate the materiality of the facts claimed to be an issue. (*Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325, 326.) In determining whether there is a genuine issue of material fact, a trial court is required to consider the pleadings and admissions, affidavits in support of and in opposition to the motion, and any other evidence before the court. (*Fuller v. Justice* (1983),117 Ill. App. 3d 933, 938; *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9,12.) Depositions may be used for any purpose for which an affidavit may be used (107 Ill. 2d R. 212(a)(4)), and a motion for summary judgment may be supported by depositions. *Breault v. Feigenholtz* (1973), 54 Ill. 2d 173, 184; *Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347, 351.

If, upon examination of the materials—which are to be construed strictly against the movant and liberally in favor of the opponent (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Abel v. General Motors Corp.* (1987), 155 Ill. App. 3d 208, 217)—it can fairly be said that a material dispute exists as to the facts, a motion for summary judgment should be denied. (*Wegener v. Anna* (1973), 11 Ill. App. 3d 316, 320.) The right of the moving party to obtain a summary judgment must be clear and free from doubt. *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793.

Inasmuch as the plaintiff has a constitutional right of trial by jury, summary judgment is not available to the court as a matter of discretion. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 939; *Wegener v. Anna* (1973), 11 Ill. App. 3d 316, 319.) This court will reverse a grant of summary judgment if it determines that a genuine issue of material fact does exist (*Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31; *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 754), and that the moving party is not entitled to judgment as a matter of law. *Bloese v. Board of Education* (1985), 138 Ill. App. 3d 460, 463; *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793.

In compliance with the "other cases" approach of *Talandis*, we are unable to find that the plaintiffs' brief here demonstrates *prima facie* reversible error.

As discussed above, plaintiffs' first contention that the foreseeability of the likelihood of contact with the wires was solely a fact question for the jury is incorrect, since foreseeability is also a part of the court's duty determination, which is a question of law.

In their second contention, plaintiffs assert that "*the duty to maintain adequate circuit breakers* is a compelling logical extension of *Merlo's* requirement of 'insulation and vigilance in maintaining the wires in proper condition \*\*\*' [*Merlo v. Public Service Co.* (1942),] 381 Ill. at [315]." (Emphasis added.) Their amended complaint alleges, however, that Commonwealth Edison's failed duty was in "*[n]ot installing* on to the power lines circuits or other devices which would cut off the flow of electricity when the lines were severed." (Emphasis added.)

Excerpts from depositions appended to Commonwealth Edison's reply memorandum in support of its motion for summary judgment show that the power line in question was equipped with a circuit breaker which had tripped off as a result of the impact. Because plaintiffs have not supplied this court with the depositions taken, we are unable to draw any contrary inferences on this issue which would

be favorable to the plaintiffs' contention.

■ Plaintiffs' third contention is that Commonwealth Edison had a duty to warn plaintiffs of even known dangers "where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should have known that harm might or could occur if no warning is given." Plaintiffs cite for this proposition *Williams v. Brown Manufacturing Co.* (1968), 93 Ill. App. 2d 334, *rev'd & remanded on other grounds* (1970), 45 Ill. 2d 418, which was a products liability case and which did not involve known dangers. Plaintiffs present no argument as to how that authority is relevant to the circumstances of the instant cause, but merely conclude that "given the duties discussed above, Commonwealth Edison had a duty to warn." Such a conclusional argument may be considered waived, and we so consider it. *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251, 268; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 943.

Plaintiffs' fourth contention—that the issue of Commonwealth Edison's negligence should have been submitted to a jury—is unsupported by any pertinent citation of authority or references to the record as required by Supreme Court Rule 341 (107 Ill. 2d R. 341(e)(7)) and is basically a reargument of their first contention. Accordingly, it need not be considered.

■ ■ Plaintiffs' final contentions are (1) "that there is reversible error in every sentence of the May 6, 1985, order [the order granting summary judgment]" and (2) that "the July 22 order is erroneous (the order denying the plaintiffs' motion to reconsider)." Plaintiffs then present argument addressed to each recital in the court's May 6 and July 22 orders. It is well established, however, that the reviewing court is not bound by the precise reasons given by the lower court in entering summary judgment and may sustain entry of the judgment if the decision is justified by any reason appearing in the record. (*Local 336, IBEW v. Detorrice* (1986), 151 Ill. App. 3d 608, 615; *Mt. Prospect State Bank v. Marine Midland Bank* (1983), 121 Ill. App. 3d 295), regardless of whether the circuit court relied on those grounds and regardless of whether the circuit court's reasoning was correct. (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148; *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) Moreover, a motion to reconsider a judgment falls within the category of post-judgment motions which must be filed within 30 days after the challenged judgment is entered. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1203; *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 538.) Such post-judgment motions are addressed to the trial court's sound discretion (*In re Marriage of Stu-*

*art* (1986), 141 Ill. App. 3d 314, 316), and the issue on appeal is whether the trial court has abused its discretion in denying that motion. *Rahill Corp. v. Urbanski* (1984), 123 Ill. App. 3d 769, 777.

All the arguments presented by plaintiffs with regard to these two orders of the court necessarily depend for their validity upon the facts of the case as revealed in the depositions which, again, this court does not have. (*Cf. Lanning v. Wiatr* (1979), 76 Ill. App. 3d 135 (where the court was unable to determine whether the trial court's decision was prejudicial without an offer of proof of the excluded material inasmuch as the omitted portions of the deposition were not in the record and, therefore, not before the court for review).) Further, plaintiffs do not argue that the court abused its discretion in denying their motion to reconsider.

██ █ Without adequate support in the record, an allegation included in the statement of facts contained in an appellate brief lies outside the record (*In re Marriage of Hirsch* (1985), 135 Ill. App. 3d 945, 964; *Paine, Webber, Jackson & Curtis, Inc. v. Rongren* (1984), 127 Ill. App. 3d 85, 92); such unsupported factual references should be stricken and not considered on appeal from summary judgment adverse to the plaintiff. (*Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628.) It was the plaintiffs' burden here as appellants to provide this court with a record sufficiently complete to permit review of the error complained of, and doubts arising from presentation of the record are to be resolved against the appellants. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389; *Bland v. Norfolk & Western Ry. Co.* (1986), 140 Ill. App. 3d 862, 865.) It is not the obligation of the appellate court to search the record for evidence supporting reversal of the trial court. (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 48-49; *In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392, 396.) When portions of the record are lacking, it will be presumed that the trial court acted properly in entry of the challenged order and that the order is supported by the part of the record not before the reviewing court; that is, in the absence of a proper record, it is presumed that sufficient evidence was presented to support the trial court's judgment and, thus, to require affirmance of the judgment. *Smith v. City of Greenville* (1983), 115 Ill. App. 3d 39; *In re Estate of Rice* (1982), 108 Ill. App. 3d 751; see also *In re Estate of Steward* (1985), 134 Ill. App. 3d 412; *Johnson v. Figgie International, Inc.* (1985), 132 Ill. App. 3d 922.

Under the circumstances of the instant cause, we are required to presume that the missing portions of the record support the trial court's judgment that no genuine issue of material fact existed and

that Commonwealth Edison was entitled to judgment as a matter of law. Accordingly, the judgments of the circuit court of Lake County are affirmed.

Judgments affirmed.

REINHARD and DUNN, JJ., concur.