2020 IL App (1st) 19-1424-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
September 30, 2020

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ELLEN HANNA AKEL, | ) | |
| | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois, |
| | ) | Chancery Division. |
| v. | ) | |
| | ) | No. 2011 CH 22235 |
| MAZEN ABDEL RAHMAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | The Honorable |
| | ) | Helen Democopoulos, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Pucinski specially concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the appellant has failed to provide this court with a transcript from the trial court proceedings, or any acceptable substitute permitted under Illinois Supreme Court 323 (Ill. S. Ct. R. 323 (eff. Dec. 13, 2005)), we presume that the trial court's denial of the plaintiff's motion to vacate judgment on her slander of title claim was made in conformity with the law and had a sufficient factual basis.

¶ 2    This appeal arises from a two-count complaint filed by the plaintiff, Ellen Hanna Akel (Ellen) against the defendant Mazen Abdel Rahman (Mazen) alleging that a power of attorney executed in Illinois was a forgery and that the subsequent use of that power of attorney by Mazen

to effectuate a transfer of property owned by the plaintiff in Palestine, was wrongful. Count I of the complaint sought declaratory judgment that the power of attorney executed in Illinois was a forgery. Count II sought a money judgment for slander of title against Mazen for his participation in the alleged publication and use of the forged power of attorney to effectuate the wrongful transfer of the plaintiff's property in Palestine. After trial, the court entered judgment in favor of the plaintiff on Count I, declaring the power of attorney a forgery and therefore invalid. The court then continued the cause of action as to Count II and a determination of the court's jurisdiction. The court subsequently found that it lacked jurisdiction to consider the slander of title claim and dismissed Count II. The plaintiff filed a motion to vacate judgment as to Count II. That motion was denied. The defendant now appeals from the denial of that motion, contending that the trial court should not have dismissed Count II of her complaint because it had both subject matter and personal jurisdiction. For the reasons that follow, we affirm.

¶ 3                                    II. BACKGROUND

¶ 4        From the outset, we note that the record provided to us on appeal is sparse and insufficient. The record does not contain any report of the proceedings below, nor any acceptable substitute such as a bystanders report, or an agreed statement of facts, as authorized under Illinois Supreme Court Rule 323 (Ill. S. Ct. R. 323 (eff. Dec. 13, 2005)). From the sparse common law record before us, we have been able to glean only these pertinent facts and procedural history.

¶ 5        On June 21, 2011, the plaintiff, who is a resident of Florida, filed a two-count complaint in the circuit court of Cook County against the defendants: (1) Mazen, an Illinois resident; and (2) Najia Jamil Ahmed Elho (Najia), a resident of Palestine. In her complaint, the plaintiff alleged

2

that she was the owner of certain real property in Ramallah City, Palestine, commonly known as plat number 106 block number 15 AL-Gadwall (the property). The plaintiff asserted that she inherited the property from her husband Elias Sari Akel (Elias), who died on May 22, 1992. According to the complaint, however, on March 17, 2003, nearly 11 years after her husband's death, a power of attorney was executed and notarized in Illinois purporting to give Najia the right to sell the property. The complaint alleged that Mazen forged Elias's signature on the power of attorney and mispresented himself as Elias to the notary public. Thereafter, the complaint alleged, Najia and Mazen used the power of attorney to falsely assert that Rahman was the owner of the property and to record his name as owner in the public records of Ramallah City, Palestine. According to the complaint, as a result of these false publications, which were both intentional and malicious, the plaintiff suffered damages in excess of $50,000, including, *inter alia*, attorney's fees spent in attempting to defend her ownership of the property, both here and in Palestine.

¶ 6      The complaint therefore sought: (1) a declaration that the power of attorney was a forgery and therefore invalid (count I); and (2) judgment and damages against both Mazen and Najia on a slander to title claim (count II).

¶ 7      On September 2, 2011, Mazen filed a motion to dismiss asserting that the plaintiff's causes of action were barred by a prior judgment (735 ILCS 5/2-619(a) (West 2010)). Specifically, Mazen pointed out that in 2009, the plaintiff filed an identical complaint against him, which was voluntarily dismissed by agreed order in 2011 and under which the plaintiff agreed to pay Mazen's court costs upon any refiling of the action. On January 9, 2012, the trial court denied Mazen's motion to dismiss for the "reasons stated on the record."

¶ 8     Thereafter, Mazen filed his answer and raised three affirmative defenses. First, Mazen alleged that the plaintiff could not succeed on a slander of title claim because she had no legal title to the property. According to Mazen, before his death Elias sold the property to Mazen's father, and upon Mazen's father's death, the interest in the property transferred to Mazen. Second, Mazen asserted that, regardless of legal title, the property belonged to Mazen under principles of adverse possession. Finally, as his third affirmative defense, Mazen asserted that the trial court lacked jurisdiction because "the [p]laintiff brought the same action against [him] in a different jurisdiction." While Mazen's pleading did not specify in what other jurisdiction the claim had been raised (whether the plaintiff's home state of Florida, a federal court, or in Palestine), other parts of the common law record suggest that the cause of action was brought in Palestine because the plaintiff alleged she had incurred and continued to incur attorney's fees there.

¶ 9     According to the common law record, nearly four years later, on December 9, 2016, Mazen sought dismissal of the plaintiff's complaint for want of prosecution. On April 18, 2017, the trial court denied Mazen's request for dismissal. The case proceeded with discovery and was set for trial on February 12, 2018. The trial date was subsequently postponed to June 18, 2018, and the parties were given until April 30, 2018, to exchange all written and oral discovery and exhibits and to turn the same over to the trial court. Aside from Mazen's answer and the three affirmative defenses, the record on appeal contains none of that written or oral discovery.

¶ 10    The common law record reveals that on the eve of trial, Mazen's attorney moved to withdraw as his counsel, but then continued to represent Mazen and had his own motion to withdraw stricken. In response, the plaintiff filed an emergency motion for default judgement, or in the

alternative to continue the trial date. Therein, the plaintiff asserted that she was prejudiced by Mazen's gamesmanship and entitled to a default judgment based on his failure to provide her and the court with certain relevant discovery documents prior to the court's deadline of April 30.

¶ 11    After a hearing, on June 18, 2018, the trial court entered several orders. The common law record on appeal, however, contains only two. The first order barred Mazen from introducing at trial the alleged deed from Elias to Mazen's father granting Mazen title to the property (the deed). The second order held that default judgment was entered in part and denied in part "for the reasons set forth on the record in open court." That same order stated that a separate order for sanctions against Mazen would follow, and then set the case for trial on October 9, 2018. No such sanctions order is part of the record on appeal before us.

¶ 12    On July 20, 2018, Mazen filed a motion to vacate the court's order preventing him from presenting the deed at trial. On August 3, 2018, the trial court entered an order vacating its June 18, 2018, sanctions against Mazen, and giving the plaintiff 30 days to depose Mazen. The written order makes no mention of the deed.

¶ 13    According to the common law record, on October 10, 2018, the parties proceeded to trial. As already noted above, because the record on appeal contains no transcript of the trial proceedings, we have no way of knowing what evidence, testimonial or documentary, or arguments were presented to the court, and whether or not the deed purporting to give title of the property to Mazen was introduced at trial. The record on appeal contains only the trial court's written order, which granted judgment in favor of the plaintiff on Count I, and continued all remaining issues to January 8, 2019, for "status and determination as to whether [the court] has jurisdiction over the slander of title claim in Count II concerning property located in Palestine."

Furthermore, according to the written order in declaring the power of attorney dated March 17, 2003, to be a forgery and therefore void and invalid, the court explicitly stated that it made "no findings that [the d]efendnat Mazen *** ha[d] any responsibility or accountability for the [March 17, 2013] forgery."

¶ 14    The common law record next reflects that on January 8, 2019, the court entered a handwritten order finding that it lacked jurisdiction over the slander of title claim and dismissed Count II with prejudice. This handwritten order provides no rationale for the trial court's finding. Moreover, since we are without any record of the proceedings below, we have no way of knowing whether before making this ruling, the trial court heard additional arguments from the parties, or which evidence presented at trial on this issue it considered.

¶ 15    On February 7, 2019, the plaintiff filed a motion to vacate the judgment on Count II, asserting that the trial court had misapplied the law on jurisdiction. In its four-page motion, the plaintiff very generally argued that the trial court had both subject matter and personal jurisdiction over Mazen. Specifically, the plaintiff asserted that the court had personal jurisdiction over Mazen because under the Illinois long arm statute (735 ILCS 5/2-209(b)(2) (West 2012)) the court had personal jurisdiction over all residents within Illinois at the time the cause of action arose, the action was commenced, or process was served. In addition, the plaintiff asserted that Mazen waived any objection to personal jurisdiction by participating in the case on the merits. Plaintiff also argued, albeit intartfully, that the fact that the property was in Palestine had no bearing on the court's jurisdiction because her slander of title action was an *in personam* rather than an *in rem* action, which sought a monetary judgment against Mazen.

¶ 16    On April 3, 2019, Mazen filed a response to vacate the judgment on Count II, asserting that

no new evidence had been introduced to the court since the trial and that the court had by no means misapplied the law. Mazen argued that because the slander of title cause of action required the plaintiff to prove that she had legal title to the property, that Mazen had made a false and malicious publication that disparaged her title to that property, and damages arising from that publication, the court had no jurisdiction over the cause of action, where the property itself was located in Palestine and the alleged malicious publication had occurred there. Mazen asserted that because the United States had no diplomatic relationship with Palestine, it would be impossible for the plaintiff to prove any elements of her cause of action. In addition, Mazen asserted that the trial court had no jurisdiction because the parties were currently litigating the same action (slander of title and property rights) in Palestine, and the Palestinian case was still pending.

¶ 17     On April 22, 2019, the trial court entered an order seeking supplemental briefing on the issue of whether "an Illinois court has jurisdiction over a tort claim when all of the elements of the tort took place in a foreign country, Palestine, which may not have diplomatic relations with the United States and jurisdiction of the trial court is based upon the residence of the defendant in Illinois."

¶ 18     The parties both filed short supplemental briefs. The plaintiff argued that under the plain language of the Illinois long arm statute, the court had general personal jurisdiction over Mazen as Mazen was an Illinois resident, even for conduct that occurred outside of the state. The plaintiff generally argued that the fact that the tort occurred in a different country was irrelevant. She made no mention of the fact that the United States had no diplomatic relations with Palestine, nor attempted to address any problems that could arise from that fact.

¶ 19     Mazen, on the other hand, asserted that the court had no jurisdiction because the first element of slander to title was legal title to property, and the court had no jurisdiction over a property located in Palestine.  Mazen further argued that even if the court had general jurisdiction over Mazen's person, through the long-arm-statute, that jurisdiction was limited by the doctrine of *forum non convenience*, under which Illinois was clearly not the proper forum for this case.  In this respect, Mazen asserted that all of the elements of the slander of title claim (title ownership, publication, malice of intent, damage to resale value), involved matters of foreign real estate law and local conditions that could not be readily or easily determined from the forum of an Illinois state court.  He argued that requiring the production and verification of records, witnesses and evidence from Palestine would be nearly impossible as a result of the *ad hoc* and at times adversarial nature of the relations between the United Sates and Palestine.  In addition, Mazen asserted that using Illinois as a forum would place an inordinate burden of production on him, as well as an administrative burden on the Illinois state court.  Finally, he asserted that the plaintiff's residence in Florida undermined her choice of Illinois as venue.

¶ 20     On June 10, 2019, the trial court held a hearing on the motion to vacate judgment as to Count II, after which it denied the motion.  The record on appeal does not contain a transcript from this hearing, or any adequate substitute.  Accordingly, we have no way of knowing whether any new evidence or facts were presented to the trial court, or what arguments, in addition to those presented in the parties' briefs, may have been raised.  Nor can we know on what basis (jurisdiction or *forum non convenience*) the trial court ultimately made its ruling not to vacate judgment on Count II.  The plaintiff now appeals.

¶ 21                                    II. ANALYSIS

¶ 22       On appeal, the plaintiff contends that the trial court erred in denying her motion to vacate the dismissal of her slander of title claim on the basis of lack of jurisdiction.  She contends that the trial court had both subject matter jurisdiction to consider the slander of title claim and personal jurisdiction over Mazen.

¶ 23       At the outset, we note that Mazen has not filed an appellee's brief with this court.  As such, we are bound to apply the principles set forth by our supreme court in *First Capitol Mortgage Corp. v. Talandis Construction Corp.,* 63 Ill.2d 128, 133 (1976) in order to determine whether we may properly resolve the merits of this appeal with the record before us and based solely on the arguments raised by the plaintiff.  In *Talandis*, our supreme court held that a reviewing court should neither "feel compelled to serve as an advocate for the appellee," nor be required "to search the record for the purpose of sustaining the judgment of the trial court."  *Talandis,* 63 Ill.2d at 133.  Rather, our supreme court " 'set forth three distinct, discretionary options" available to a reviewing court in the absence of an appellee's brief: " '(1) it may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record.' " *Steiner Electric Co. v. Maniscalco*, 2016 IL App (1st) 132023, ¶ 76 (quoting *Thomas v. Koe,* 395 Ill. App. 3d 570, 577 (2009)); see also *Talandis,* 63 Ill.2d at 133.

¶ 24       Because the record in this case is essential to a resolution of the court's alleged error, for the

reasons that follow, we find that the plaintiff has not provided a sufficient record of the proceedings below to permit us to properly evaluate the merits of her appeal, let alone decide this appeal in her favor. See *Lill Coal Co. v. Bellario,* 30 Ill. App. 3d 384, 385 (1975); see also *Foutch v. O'Bryant,* 99 Ill. 2d 389, 392 (1984).

¶ 25    It is axiomatic that an appellant has the burden to present a sufficiently complete record on appeal to support a claim of error, and in the absence of such a record, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch,* 99 Ill.2d at 392; *LaSalle National Bank v. City Suites, Inc.,* 325 Ill. App. 3d 780, 788 (2001); see also *Kim v. Evanston Hospital,* 240 Ill. App. 3d 881, 888 (1992) ("[a]ppellant has the duty to present a complete record to the reviewing court so that the court may be fully informed about the issues that it must resolve")). Any doubts that arise from the incompleteness of the record will be resolved against the appellant. *Id.* The appellant's burden of providing the reviewing court with an adequate record on appeal remains the same regardless of whether an appellee files his brief. See *Coleman v. Windy City Balloon Port, Ltd.,* 160 Ill. App. 3d 408, 419 (1987) (holding that even where appellee provides no brief on appeal, the appellant must nevertheless provide the reviewing court with a record sufficient to support his claims, and where he fails to do so, the reviewing court must presume that the missing portions of the record support the legal and factual findings of the trial court, and affirm the judgment of that court); see also *Talandis,* 63 Ill. 2d at 133 (permitting a reviewing court to decide the appeal in favor of the plaintiff, without the benefit of appellee's brief, only if the plaintiff presents a *prima facie* that is "supported by the record on appeal.")

¶ 26    In the present case, the plaintiff has failed to provide us with any report of the proceedings

below, or any acceptable substitute such as a bystander's report, or an agreed statement of facts, as authorized under Illinois Supreme Court Rule 323  See Ill. S. Ct. R. 323 (eff. Dec. 13, 2005). As such, we are without a transcript from: (1) the trial; (2) any post-trial hearing that may have been held on the dismissal of the slander of title claim; and (3) the hearing on the plaintiff's subsequent motion to vacate judgment on that claim.  Instead, all that appears before us is the sparse common-law record, which, relevant to this appeal, includes the trial court's orders: (1) dismissing Count II on the basis of "lack of jurisdiction"; (2) seeking additional briefing from the parties on the plaintiff's motion to vacate judgment as to the slander of title claim; and (3) denying the plaintiff's motion to vacate judgement.

¶ 27    Since none of these orders provide any rationale for the trial court's rulings, we can only speculate as to what evidence and arguments were presented to the court at trial and at any of the subsequent posttrial hearings, including, most glaringly, at the hearing on the plaintiff's motion to vacate judgment as to Count II.  Accordingly, we have no way of knowing on what basis the trial court made its final ruling.  For example, we cannot know whether the trial court denied the plaintiff's motion to vacate judgment on the basis of lack of personal or subject matter jurisdiction, or whether, on the other hand, it took into consideration the interplay between jurisdiction and the doctrine of *forum non convenience*, as was urged by Mazen in his response to the plaintiff's motion to vacate.  Moreover, even if as the plaintiff claims, the trial court ostensibly determined that it lacked personal jurisdiction to consider the slander of title claim, without a trial transcript, we have no way of knowing what factual evidence the court considered in coming to that decision, let alone whether the court's factual findings were against the manifest weight of the evidence.  See *Madison Miracle Productions, LLC v. MGM Distribution*

11

*Co.*, 2012 IL App (1st) 112334, ¶ 39 (holding that where the trial court presides over an evidentiary hearing on the issue of personal jurisdiction and makes factual findings the appellate court must review all of the "relevant factual findings deferentially under the manifest weight of the evidence standard," and only the legal conclusion *de novo*).

¶ 28    Accordingly, in the absence of any transcript from the proceedings below, or any acceptable substitute, we must presume that the trial court's order denying the plaintiff's motion to vacate judgment as to Count II was in conformity with the law and had a sufficient factual basis. See *Foutch,* 99 Ill. 2d at 392 (holding that where an appellant failed to provide a transcript or bystander's report of the hearing on a motion to vacate, the reviewing court had no basis for holding that the trial court had committed an error in denying the motion); see also *In re Marriage of Gulla and Kanaval,* 234 Ill. 2d 414, 423–24 (2009) (holding that where an appellant failed to provide a transcript of the trial court's hearing in which it found that it had jurisdiction over the appellant, the reviewing court had to presume that the trial court's finding was correct).

¶ 29                                III.  CONCLUSION

¶ 30    For the reasons that follow, we affirm the judgment of the circuit court.

¶ 31    Affirmed.

¶ 32    Justice Pucinski specially concurs.

¶ 33    With the greatest respect to my colleagues, and to the experienced trial judge, this is the kind of case that makes citizens lose confidence in the court.

¶ 34    No one can know why in the world the attorneys for the Plaintiff did not make arrangements

for a transcript or a bystanders' report of the proceedings. Without knowing what was said in front of the trial judge it is, as my colleagues have correctly pointed out, our legal duty to determine that the judge knew the law and followed it.

¶ 35    However, we have the benefit of several important and compelling orders.

¶ 36    The trial judge affirmatively found that a fraud had been committed by an Illinois resident by presenting a Power of Attorney executed and notarized in Illinois that is a forgery concerning property in Palestine.

¶ 37    The trial judge clearly had personal jurisdiction over the defendant, particularly since the defendant actively participated in all court proceedings. The defendant does not deny Illinois personal jurisdiction.

¶ 38    The trial judge had jurisdiction over the torts alleged even though the real estate in question lies in Palestine, since the plaintiff seeks a money judgment for the harm done to her by the fraudulent conveyance of the real property in Palestine.

¶ 39    This is not an *in rem* procedure.

¶ 40    I think the better practice would have been to maintain jurisdiction over this defendant and stay this case until the real estate issues are decided by a proper court in Palestine. Then the trial court could decide whether or not money damages are suitable. To dismiss this case for lack of jurisdiction denies this plaintiff her rights under Illinois tort law and leaves her potentially harmed without recourse.

¶ 41    There simply has to be a better way.

¶ 42    I note that it is common in Cook County domestic relations cases which involve property

13

division in other nations for Cook County judges to retain jurisdiction until the native country's courts can decide the property issue. This is the process used for property in Poland, since Poland's constitution requires that only Polish courts can deal with real property in Poland. This is a good system and protects not only the native country's laws and legal requirements, it gives Illinois courts the opportunity to protect Illinois residents from mischief.

¶ 43     I believe that the trial court jumped too soon to dismiss the case for lack of jurisdiction based on the orders presented; however, without a proper report of proceedings or bystanders' report we can take this case no further.